FRANK N. SHAW, FREDERICK F. METCALF, BERNARD HORSTMAN, SCHUYLER C. RHONE, THOMAS STORIE AND MYRON L. GOHN, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS AND RESPONDENTS, v. CITY OF KALISPELL, Montana, A MUNICIPAL CORPORATION, CLAUDE WALTER, AS MAYOR THEREOF, W. L. CARLISLE, WALTER S. YOUNG, FRANK B. HALLIS, JAMES GUSTIN, HARRY FISHER, DR. HARRISON D. HUGGINS, T. C. HARMON AND RICHARD VICK, AS ALDERMEN AND CITY COUNCIL THEREOF, AND H. J. HUNT, AS CITY CLERK THEREOF, DEFENDANTS AND APPELLANTS.

No. 9967.
Submitted January 13, 1959. Decided June 3, 1959.
340 Pac. (2d) 523.

MR. JUSTICES ADAIR and BOTTOMLY dissented.

Merritt N. Warden, Kalispell, for appellants.
James A. Cumming, Columbia Falls, for respondents.

MR. JUSTICE CASTLES:

This is an action for an injunction brought by the six named plaintiffs against the City of Kalispell, its mayor, aldermen, and clerk, in connection with a special improvement district created for the purpose of participating with the Montana

Highway Department and United States Bureau of Public Roads in the improving, widening and reconstruction of sections of U. S. Highway No. 2 and U. S. Highway No. 93, within the boundaries of the City of Kalispell and therefore a part of its street system. The plaintiffs allege that they brought the action on behalf of themselves "and for the benefit of all of the other owners of property within said special improvement district."

At the time of the filing of the complaint, the plaintiffs also filed three affidavits in support of a request for a temporary restraining order and an order to show cause why an injunction pendente lite should not issue. The court did not issue a temporary restraining order but did issue an order to show cause as requested. Following the hearing on the order to show cause, the court issued an order denying the requested injunction pendente lite.

A general demurrer to the complaint was overruled. Subsequently an answer was filed by the defendants to which a demurrer was interposed. This demurrer was overruled.

In the complaint, the plaintiffs attack the validity of the creation of Special Improvement District No. 294 of the City of Kalsipell on several grounds. These grounds may be roughly divided into three categories.

The first ground of attack is that the City failed to mail copies of the notice of the passage of the resolution of intention to create the special improvement district to two couples, Frank N. Shaw, who is one of the named plaintiffs, and his wife, Lillian E. Shaw, and John H. Dewell and his wife, Thelma A. Dewell. It is alleged that they were persons having real property within the proposed district. The Dewells and Lillian E. Shaw were not named as parties plaintiff.

The second ground of attack was that the defendants had acted capriciously, arbitrarily, wilfully, and in fraud of the plaintiffs in a number of particulars in creating the district. It was alleged that the defendants had used improper standards and reason in making their official determination of the

area that would be benefited by the improvement; that much of the land in the proposed district was zoned for residential use; and that a uniform yardstick of distance was not used by the city council in fixing the boundaries of the district.

The third ground of attack was that a portion of the area included in the district had been annexed to the city some two years ago, but that the annexation proceedings had been improperly taken at that time. It was not alleged that any of the plaintiffs had property in the annexed area or that any owners of property within the annexed area were complaining or had ever raised any question about the legality of such annexation proceedings.

In the answer filed by the defendants, it was admitted that no notice had been mailed to either the Shaws or the Dewells, but it was alleged that if they were owners by reason of purchasing their respective properties under contracts for deed or otherwise, such contracts had never been recorded nor did the defendants have actual knowledge of such claim of ownership. It was also alleged that notices had been properly mailed to the record owners of the property in each instance and that the notices had been published as required by law.

It was further alleged in the answer that each of the named plaintiffs had participated in the proceedings by filing protests, including the plaintiff, Frank N. Shaw, and that his wife, Lillian E. Shaw, had likewise filed a protest. It was also alleged that the total protests received were from owners of only 23.03 percent of the land in the proposed district and that the tract of land apparently purchased by the Dewells under an unrecorded contract was so small that the percentage of area protested would not have materially increased had they filed a protest.

Two affirmative defenses were set up in the answer.

The first was that the Shaws and Dewells did not avail themselves of the statutory right to record their contracts so as to give notice of their claim of ownership in the respective parcels of land; that they were therefore estopped to deny the

validity of the actions of the defendants who caused a diligent search to be made to determine the names of persons having property within the district; and that they had no actual knowledge of the interest claimed by the Shaws and the Dewells.

The second affirmative defense was that the plaintiffs are not qualified to maintain this action in a representative capacity and that therefore the action has not been brought in the name of the real parties in interest; that a very great number of persons whom the plaintiffs purport to represent do not wish this litigation; that many favor the project and have worked long and hard for its accomplishment; that owners of only 23.03 percent of the area in the proposed district filed written protests; that all persons objecting to the proceedings, including the plaintiffs, had an ample opportunity to be heard under the provisions of section 11-2206, R.C.M. 1947, and are therefore now estopped to deny the validity of the actions of the defendants.

At the outset of the trial, an objection was made by the defendants to the introduction of evidence by the plaintiffs on the ground that the complaint did not state a cause of action. After argument, the objection was sustained. Notwithstanding this ruling, the court permitted the plaintiffs to make a lengthy "offer of proof" as to what evidence they would have presented had they been permitted to proceed. The defendants objected to this procedure and to the "offer of proof." The court denied the offer of proof.

The court then announced that it would take the case under advisement *on the basis of the facts pleaded on the question of the necessity, under section 11-2204, of the city clerk to mail copies of the notice of the passage of a resolution of intention to create a special improvement district to persons purchasing real property within the proposed district under an unrecorded contract for deed, when the city officials had no actual knowledge of such ownership interest,* and the additional question

of the right of the plaintiffs to attack in this proceeding, the validity of such proceedings.

The defendants moved for a judgment of dismissal of the action on the merits and this motion was also taken under advisement, time being granted for the filing of briefs. Subsequently the lower court made and filed findings of fact and conclusions of law in which it simply found that the Shaws and the Dewells were persons having property and residing within, the proposed district; that no notice had been given them under section 11-2204; and that the Shaws had waived the defect of failure of required notice by filing protests in the proceedings.

From these findings the court concluded that the plaintiffs were entitled to judgment as prayed for. A decree was entered stating that the proceedings of the defendants, creating the special improvement district, were invalid and that the defendants were enjoined and restrained from further acts and proceedings in connection therewith. Exceptions to the findings were filed by both parties. This appeal is from that judgment and decree.

The recitation of the facts of this appeal heretofore set out reveal a remarkable record to say the least. After the trial court ruled that no evidence would be received on the grounds that the complaint did not state a cause of action, it nonetheless made findings of fact and granted plaintiffs the prayer of their complaint.

It should further be said that no motion for judgment on the pleadings was made by either party. Neither was any attempt made by plaintiffs to amend their pleadings which were ruled not to state a cause of action. Yet, the same plaintiffs have judgment. Under this state of the record this court is asked to rule on an appeal.

We must assume that regardless of the lack of a motion for judgment on the pleadings, that such a judgment was made by the court of its own motion. We must also assume that the court subsequently reversed itself on its ruling that no cause

of action was stated by the plaintiffs and ruled that a cause of action was stated. Apparently we must also assume that the defendants confessed judgment. Of course, such an assumption cannot be indulged. Obviously the judgment cannot stand. The propriety of the first two assumptions by this court may certainly be questioned, but some disposal must be made of the appeal.

As we said in Bradbury v. Nagelhus, 132 Mont. 417, 427, 319 Pac. (2d) 503, 510:

"Appeals in equity require a disposal by this court which will 'put an end to litigation and avoid the necessity of new trials involving expense and the contingencies incident to delay.' State ex rel. United States Fidelity & Guaranty Co., of Baltimore, Md. v. District Court, 77 Mont. 594, 600, 251 Pac. 1061, 1062."

The instant case is one of considerable public interest, and applying the above rule we should attempt to aid an orderly disposal of the issues, if possible. The highway and street improvements which are involved are of considerable concern, and since these same improvements have been in litigation for two or three years and have been before this court in an appeal in another action, Wood v. City of Kalispell, 131 Mont. 390, 310 Pac. (2d) 1058, we will attempt to answer the main issue to avoid further and prolonged litigation.

Although we have before us ably done briefs by counsel for both sides, which pose interesting problems, we are constrained from attempting to answer all question posed because they are not properly before us. We think that one question in two parts presents the main issue.

First, may parties, who have either received notice or waived notice by appearing to protest, take advantage of the failure of notice to other parties who have neither protested nor appear as parties to the suit. Second, is it necessary under the provisions of section 11-2204 that the city clerk mail copies of the required notice to persons who are neither record own-

ers nor personally known owners of an interest in property in the district?

We answer each question in the negative.

It is clear from the pleadings, and the respondents concede, ▇ that none of the plaintiffs can question the lack of notice to themselves, because they either received notice or appeared to protest and thereby waived notice. Can they do so in a representative capacity as to others who neither protest nor join in a suit and who, as shown by the pleadings, could not constitute a sufficient numerical protest to affect the proceedings? We think not.

Section 11-2204 requires that "a copy of such notice shall be mailed to every person * * * having property within the proposed district at his last known address, upon the same day such notice is first published or posted."

In Ross v. Board of Supervisors, 128 Iowa 427, 434, 104 ▇ N. W. 506, 509, 1 L.R.A., N.S., 431, the Iowa court said:

"Generally speaking * * * no one is entitled to raise the objection [of want of notice] except the party entitled to the notice. Assume, for instance, that proceedings for the establishment of a highway several miles in length, and passing through the lands of many different persons, are instituted, carried through to the final order, and the road is established and opened to travel. If, a year or two later, it be discovered that a nonresident owner of a single small tract was by some mistake omitted from the notice for which the statute provides, we may concede that as to such land and such owner the order of establishment is voidable or void; but it would be a somewhat startling proposition to hold that failure to notify this one owner is a jurisdictional defect of which every other owner along the line may take advantage, even though he himself was duly and properly notified."

In Poundstone v. Baldwin, 145 Ind. 139, 44 N. E. 191, 193, the Indiana court said:

"The rule is that appellants can only bring before the court such questions as affect their right, and not such as affect the

rights of others. The fact that one or more of the landowners was not notified will not vitiate the proceedings as to those who were properly notified. [Citing cases.]''

In Hurst v. Town of Martinsburg, 80 Minn. 40, 82 N. W. 1099, 1101, the Minnesota court said that one receiving notice for the laying out of a road may not question the proceedings on the ground that another was not properly served, and then states:

"Elliott Roads [& S. 242, 244], lays down the general rule on this subject as follows:

"'Where notice is required, it is essential to confer jurisdiction, for without some notice there is no jurisdiction, and the proceedings are [absolutely] void. It is not, however, to be understood that where there is jurisdiction of the subject-matter, and there are many persons interested as owners of different parcels of land, failure to give notice to some of the property owners will vitiate the entire proceeding. In such cases the better opinion is that the proceeding is void only as to those who have not been notified, but valid as to those who have had notice. * * * Proceedings in highway cases, therefore, are not, as a general rule, impeachable by persons who by due process of law have been brought into court, although other property owners may not have received notice.' * * * No very good reason occurs to us why a person who has been duly served with notice, or has voluntarily appeared in the proceedings and thereby waived notice, should be permitted to urge the failure to serve his co-defendant, or to set himself up as a representative of the public generally.''

We recognized this rule in Wood v. City of Kalispell, supra, when we specifically limited the decision to the one person not receiving notice who was also a party plaintiff.

Now, even if the Dewells were parties plaintiff, they are not persons "having property within the proposed district" within the meaning of R.C.M. 1947, sec. 11-2204.

Elliott on Roads and Streets, Vol. 1, sec. 363, at page 420, 421, (4th ed.) states:

"Where the statute requires notice to owners of property, it is sufficient, as a general rule, to give notice to those whose titles appear of record. This must ordinarily be the rule in highway cases as well as in other cases, since there is no other method provided by law for ascertaining who are the owners of land, and if the owner by his own carelessness omits to give the legal notice of his title he is so much in fault as not to be entitled to be heard to aver that he was not given notice of the proceedings taken to appropriate the land."

It should be kept in mind that we are not dealing with who might be entitled to protest under R.C.M. 1947, sec. 11-2206. We are only concerned with persons holding property who are entitled to written notice. It might further be noted that section 11-2204 provides for a published notice. This publication is to notify persons who would not otherwise be notified so that they might show themselves qualified to file written protest. In other words, due process requires a reasonable notice as to give everyone interested their opportunity to be heard. To hold the contrary would put a premium on concealment of real property ownership.

How is the city clerk to determine the names and addresses of persons "having property within the district?" What was intended by the legislature as being sufficient effort on the part of the administrative clerk of a city in determining the names and last known addresses of the owners of property within the proposed district?

The historic source of information concerning the ownership of real property, or of an interest in real property, has been the property ownership records kept in the office of the clerk and recorder of each county. For many purposes the legislature has referred to "the last completed assessment roll" of a county as the source of identity of persons entitled to act by petition, by voting, etc. The registration statutes (R.C.M. 1947, Title 16, chapter 29) were enacted so as to provide property owners with a means of notifying all others of their interest or claim of interest in real property.

.. It cannot be assumed that a city clerk, or any other city official, has the means at hand to inform himself of all interests that all persons might claim in property located within a city, or within a particular special improvement district. There is no statutory limitation on the size of a special improvement district. Such a district may be one block in size, or it may encompass many city blocks. Only the official county records can give reliable and complete information as to property ownership or claims of interest in property. Surely the legislature intended that such records should be consulted and that notices should be mailed to owners of property at their last known addresses as shown by such records. Any other interpretation would impose a most unrealistic and impossible task upon city officials and it would be virtually impossible, if not completely so, to ever create a special improvement district in this state.

It is alleged in the answer of the defendants, and not denied, that the city clerk made a thorough and exhaustive search of the public records in determining the ownership of the hundreds of lots and unplatted and irregular tracts within the proposed district. No greater precautions could be taken to insure an accurate listing of property owners. Surely the legislature did not intend that more than this be done.

In 48 Am. Jur., Special or Local Assessments, sec. 124, page 673, it is said, "Generally, the term 'owner', as used in a statute requiring assessment bills for local improvements to state the name of the owner of the property, denotes the person to whom the public records show to be vested with title, in the absence of knowledge to the contrary."

The official record is the only source that is capable of giving positive information as to property ownership. It is used every day in the preparation of abstracts and title insurance policies in connection with real estate transactions. Such records are the *official* records of the county and of the public as a whole and have always been recognized as such by the courts.

Likewise, that is the *only* source that is capable of giving positive information as to the *"last known address"* of property owners in general. It is so used in quiet title actions, in notifying of tax assessments, tax delinquencies and sales, and in many other proceedings affecting property ownership and interests. Again, courts have historically recognized this source as the official source of such information.

And finally, it is the only source that is capable of giving information as to ownership and addresses as of a specific time. Here the ownership and addresses must be determined as of the day on which the "notice is first published or posted." Only the official county records are capable of giving that information. A diligent search might be made elsewhere to determine information as to ownership and addresses on a large number of tracts but, due to the number of tracts involved, it would be impossible to "fix" that information up to the date of publication of the notice except through the use of the official records of the county.

And again, as here, some one might obtain a conveyance at the last moment, or fail to record an instrument of property ownership, and the city clerk would have no possible means of learning of such conveyance or of the "last known address" of the new owner.

The legislature obviously did not intend to require an absurdity nor an impossibility. The respondents argue that to interpret section 11-2204, as we have, is to legislate. We think such is not the case, but rather we have defined the language used so that a reasonable interpretation might be had.

We have not attempted herein to answer many of the questions posed in both briefs nor in a motion by appellants to strike the respondents' cross-assignments of error. In the condition of the record before us, we do not feel it proper to go beyond the single issue which might possibly have been grounds for the district court's action.

For the reason stated, and with the comments made in ref-

erence to the notice required; the judgment is reversed, and the cause dismissed.

MR. JUSTICE ANGSTMAN and THE HONORABLE W. R. FLACHSENHAR, District Judge, sitting in place of MR. CHIEF JUSTICE HARRISON, concur.

MR. JUSTICES ADAIR and BOTTOMLY (dissenting):

We dissent.

*The Facts.* The essential facts in this case stated in their chronological order are as follows:

On January 6, 1958, James A. Cumming, Esq., as counsel for the plaintiffs, commenced this action in the district court for Flathead County, Montana, by filing in the office of the clerk of that court the plaintiff's complaint herein. At this time plaintiffs also filed in said court and cause the separate affidavits of the plaintiff Frank N. Shaw, of plaintiffs' counsel James A. Cumming, and of one John H. Dewell.

The complaint is entitled "Frank N. Shaw, Frederick F. Metcalf, Bernard Horstman, Schuyler C. Rhone, Thomas Storie and Myron L. Gohn, on behalf of themselves and all others similarly situated, Plaintiffs, vs. The City of Kalispell, Montana, a municipal corporation, Claude Walter, as Mayor thereof, W. L. Carlisle, Walter S. Young, Frank B. Hillis, James Gustin, Harry Fisher, Dr. Harrison D. Huggins, T. C. Harmon, and Richard Vick, as Aldermen and City Council thereof, and H. J. Hunt, as City Clerk thereof, Defendants." The action was assigned district court No. 14437.

The plaintiffs are all taxpayers in the defendant City of Kalispell and in their suit they sought an order to show cause,—a temporary restraining order,—an injunction pendente lite,—a permanent injunction,—and finally a decree adjudging to be null and void Special Improvement District No. 294 of the City of Kalispell and Resolutions No. 2336 and 2337 of the city council of Kalispell pertaining to such Special Improvement District.

The complaint contains ten separately numbered paragraphs and the prayer for relief. Attached to the complaint and made a part thereof as documentary exhibits are complete copies of the city council's Resolutions No. 2336 and 2337.

On January 5, 1958, upon the filing of the plaintiff's complaint and the above-mentioned three affidavits, the Honorable Dean King, district judge presiding in said district court, issued *ex parte,* an order restraining the defendants from any and all further acts or proceedings based upon the purported creation of such Special Improvement District No. 294 of said City of Kalispell, including, but not limited to the sale of the bonds of such Special Improvement District until such time as a hearing should be had and notice be given to the defendants.

Further, and on the same day, January 6, 1958, Judge King also made, issued and caused to be served upon the defendants, an order requiring that defendants show cause before such district court at 10:00 a. m. on January 14, 1958, why defendants should not be restrained and enjoined during the pendency of the action from any and all further acts and proceedings based upon the purported creation of said Special Improvement District No. 294, and also why defendants should not thereafter be permanently restrained and enjoined from any and all further acts and proceedings based on the defendant city's above Resolutions No. 2336 and 2337.

On January 14, 1958, the hearing on said temporary restraining order and order to show cause so set for that day was continued to January 16, 1958.

On January 16, 1958, the defendants appeared in the action by filing therein a general demurrer to plaintiffs' complaint, which demurrer by stipulation of counsel for the respective parties litigant, was that day heard, argued and submitted together with the order to show cause and temporary restraining order theretofore issued. All the matters so heard were then taken under advisement by the trial court.

Thereafter on January 28, 1958, Judge King made and caused to be entered an order overruling and disallowing the

defendants' demurrer to plaintiffs' complaint. By such order and ruling Judge King in effect ruled and determined that plaintiffs' complaint states a good and sufficient cause of action to entitle plaintiffs to be heard and to have the controversy determined.

Had the defendants deemed themselves aggrieved by Judge King's ruling disallowing their demurrer to plaintiffs' complaint, defendants were privileged to elect to stand on their demurrer and to suffer judgment to be entered for plaintiffs from which judgment defendants could then have taken an appeal to this court, but this they did not do.

After disallowing defendants' demurrer to plaintiff's complaint, Judge King further considered and reserved his ruling on plaintiffs' motion for a temporary injunction until January 30, 1958, on which date he made an order denying the motion but nevertheless granting to plaintiffs, express permission to again present their said motion for a temporary injunction to any district judge who should later assume jurisdiction in the case.

Next, Judge King was disqualified in the action and the Honorable E. B. Foot, the other district judge of that particular judicial district was called in, but on February 3, 1958, Judge Foot, deeming himself disqualified, declined to assume jurisdiction in the cause.

On the following day, February 4, 1958, the defendants, electing not to stand upon their demurrer to plaintiffs' complaint, filed their answer wherein they denied all allegations of the complaint not specifically admitted or denied and then separately pleaded therein three alleged affirmative defenses.

To this answer of the defendants, the plaintiffs interposed a demurrer.

When District Judge E. B. Foot declined to accept jurisdiction the Honorable Victor H. Fall, a district judge for the first judicial district of the State of Montana, was called and on February 13, 1958, he accepted and assumed jurisdiction in the cause.

On February 18, 1958, plaintiffs' demurrer to defendants' answer was orally argued before Judge Fall by counsel for the respective parties litigant, following which Judge Fall overruled and disallowed such demurrer and then, with counsel for all parties to the suit present, announced that he would attempt to *try* this case sometime during the week of March 3, 1958, the exact date of the trial to be later set by the court. To this announcement by Judge Fall for the early trial of this cause, counsel for the respective parties, in open court, agreed and assented. This demonstrates that on February 18, 1958, Judge Fall and all counsel for the parties litigant then considered that issues had been joined, and that the cause was then in a condition to be set for trial on a day certain, and to be then tried upon the merits and issues presented by the plaintiffs' complaint and defendants' answer thereto.

Judge Fall was disqualified in the cause before a definite day for the trial had been set and the Honorable LeRoy L. McKinnon, the district judge for the tenth judicial district of the State of Montana, was called and, on March 17, 1958, he accepted and assumed jurisdiction in the action.

Thus, by March 17, 1958, when Judge McKinnon assumed jurisdiction the pleadings herein had been fully settled and the cause was ready to be set for trial on the merits and on the issues joined and presented by the complaint herein and by defendants' answer thereto.

On March 21, 1958, by order that day made and entered the trial of the action was "set for April 10, 1958, at 10:00 a. m. before Hon. LeRoy McKinnon."

This order meant that counsel for all parties, together with the witnesses relied upon by them to prove the allegations of their respective pleadings, were required to be present at the appoined day and hour at a trial to be had before Judge McKinnon.

On April 10, 1958, at the time set therefor, the parties appeared before the Honorable LeRoy L. McKinnon, district judge presiding, the plaintiffs being represented by James A..

Cumming, Esq., and the defendants by Merritt N. Warden, Esq., at which time both the parties plaintiffs and the parties defendants announced that they were ready for trial.

Thereupon the plaintiffs called as their first witness, Thomas Storie, whereupon the following proceedings were had, and after first being duly sworn testified as follows:

"Q. What is your name? A. Thomas Storie.

"Q. You are one of the plaintiffs?

"Mr. Warden: To which, at this time, may it please the Court, the defendants object to the introduction of any evidence in this case on the ground that the complaint in this action completely fails to state facts sufficient to constitute a cause of action, and we would like to be heard on the matter. We think that it is serious enough to be entitled to be considered at this time by the Court. We realize it might take some little time, but we are very sincere in our contention and we would like to present our reasoning to the Court this morning.

"The Court: You wish to do that out of chambers?

"Mr. Warden: It doesn't make any difference to me, but with that noise going on outside it might be well to have it in there.

"The Court: Very well, court will recess. Are you going to want any argument in the record?

"Mr. Warden: I don't think so.

("Counsel and Court retire to jury room, and return after conference.)

"The Court: Court will be in session again. The objection of counsel for the defendants is sustained.

"Mr. Cumming: And to that the plaintiffs object to those exceptions, and we would like leave of court to adjourn until 1:30, at which time we would like to have the court convene again and we make an offer of proof.

"The Court: Very well. Court will be in recess until 1:30.

"(Recess taken to 1:30 P.M.)

"The Court: Case 14,437, Frank N. Shaw, et al., versus the City of Kalispell, et al., regularly convened at 1:30.

"Mr. Warden: May it please the Court, I believe at this time defendants should enter an objection to any offer of proof is to what this particular witness would testify to. Normally an offer is made to a certain line of questioning of a particular witness—I don't know—I am not familiar with any procedure where a general offer of proof on the part of counsel for one side or the other can be made wherein he merely relates what he intends to prove in his entire case.

"The Court: My purpose in suggesting this is to avoid the necessity of calling witness after witness, qualifying them and sustaining objections to the testimony that might be offered. I thought perhaps it would save some time to perfect the record for both sides. I am not sure on the procedure, on the question whether it ever has been done that way or not.

"Mr. Cumming: If the Court please, we would at this time like to make an offer of proof of what we would prove in this case by the testimony of these witnesses we intend to call, and also to show which documents, which other items of real evidence we intend to offer in evidence in this case, and to show the state what we intend to prove with regard to each of the documents and items of evidence, real evidence, that would be offered.

"The Court: You propose to make that orally or do you have that written out there?

"Mr. Cumming:. I will make that orally.

"The Court: Very well. You are confining this more or less to the question raised in Paragraph VIII here, are you?

"Mr. Cumming: Largely, however, there will be two or three items we will offer concerning the other two questions that were raised.

"The Court: Very well.

"Mr. Warden: For the purpose of the record, defendants object to that method of making the offer of proof on the ground that it is not the proper method and does not go to the

testimony of any particular witness that has been called to the stand.

"The Court: The objection will be overruled. You may proceed.

"Mr. Cumming: By way of documentary evidence in this case we would offer in evidence a plat of the City of Kalispell, with markings on this plat to show first the city limits, the north portion of the City of Kalispell; second, the boundaries of Special Improvement District 294 of the city of Kalispell. We would offer in evidence the plat of Northridge Heights to show first the city limits of the city of Kalispell; second, the limits and boundaries of Special Improvement District 294, of the city of Kalispell. We would offer in evidence an aerial photograph of the city of Kalispell to show the location of built up areas in the city of Kalispell, also vacant land in the City of Kalispell, the location and character of residential districts of the city of Kalispell, and the location and character of the business districts of the city of Kalispell. We would offer in evidence a certified copy of Resolution No. 2319 of intention of the City Council of the City of Kalispell to create Special Improvement District No. 291, and to show by that Resolution No. 2314 that Special Improvement District 291 was to be financed exactly the same as proposed SID 294; * * * By the testimony of witnesses to be called we would show as follows:

"By the testimony of Thomas Storie we would show that he is one of the plaintiffs, owns property in the proposed special improvement district; that he is a taxpayer on that property, that he has protested the creation of the Special Improvement District No. 294, and continues to do so; that his property is approximately a city block in extent, that the property is not benefitted by the proposed improvement. We would also show by the witness by this lawsuit he is co-plaintiff purporting to represent the persons who are described in the first and second paragraph of the Complaint."

Plaintiffs further made an offer of proof as to what plain-

tiffs' witnesses, L. B. McClintick, John Dewell, Frank I. Haswell, Henry Elwood, Myron Gohn and W. T. Lavin, would testify if permitted to take the witness stand. Mr. Warden, of counsel for defendants, objected to each of the above offers of proof. The defendants' objections to the offers of proof were sustained, whereupon the trial judge, the Honorable LeRoy L. McKinnon, announced that he would take the matter under advisement on the basis of the facts pleaded on the question of the necessity under section 11-2204, R.C.M. 1947, of the defendant City of Kalispell to mail copies of the notice of the passage of a resolution of intention to create a special improvement district to persons purchasing real property within the intended district under an unrecorded contract for deed, when the city and city officials had no actual notice of such ownership interest.

Judge McKinnon announced that he would take under consideration the additional question of the right of the plaintiffs to attack, in this proceeding, the validity of the prior actions of the city council in annexing the area designated as Northridge Heights to the City of Kalispell, and, if necessary, the validity of such proceedings.

Next the defendants through their counsel, Mr. Warden, made the following motion:

"At this time defendants move for a judgment of dismissal of this action on the merits, plaintiffs having rested and having produced no evidence in this case here material to the issues involved, and the Court having sustained the objection to the introduction of evidence, and objection to the offer of proof made by the plaintiffs. We understand the Court will take that motion under advisement, but thought we would like to make it while the Court is in session and we have formal judgment of dismissal to suggest to the Court."

The trial judge thereupon granted both parties time in which to prepare, serve and mail to the presiding judge their briefs on the matters reserved by the Court. It was stipulated by counsel for both parties that the presiding judge could

make his findings and all necessary orders and decrees, including judgment, in chambers at Lewistown.

It must be remembered that at this stage of the proceeding, none of plaintiffs' witnesses had been permitted to take the witness stand or to testify, nor was any other evidence introduced in the cause other than the witness, Thomas Storie, who was permitted only to state his name.

In sustaining the defendants' objection to the introduction of any evidence in the case on the ground that the complaint did not state facts sufficient to constitute a cause of action, and in rejecting the evidence, Judge McKinnon, in effect, overruled the order of Judge King holding that the plaintiffs' complaint stated a good cause of action. Thus the plaintiffs were prevented from having their witnesses testify and from introducing any other evidence in the case, and have been prevented from having their day in court and a fair trial of their controversy.

When Judge McKinnon sustained the defendants' objection to the introduction of any evidence he stopped the trial for the simple reason that thereafter there was nothing whatever to try. If the complaint were so fatally defective that it stated no cause of action there was nothing before the court to warrant any judgment whatever other than a judgment of dismissal of the action.

After Judge McKinnon returned to Lewistown however, he apparently underwent a change of heart and became convinced that the plaintiffs' complaint did state a good cause of action entitling them to the relief they sought so he about-faced and proceeded to make and cause to be entered findings of fact and conclusions of law wherein he stated:

"Now the briefs having been submitted and considered, and the Court being advised in the premises, the Court finds the facts as follows:

"1. That Frank N. Shaw, Lillian E. Shaw, John H. Dewell and Thelma A. Dewell, each are persons having property

within, and residing within, the proposed Special Improvement District No. 294 of the City of Kalispell, Montana;

"2. That the Defendants herein failed to give notice of the passage of the resolution of intention, as required by paragraph (2), Section 11-2204, R.C.M. 1947, to any one of the above-named four persons;

"3. That Frank N. Shaw and Lillian E. Shaw each appeared and entered protest and thereby waived the defect of failure of required notice.

"As Conclusions of Law From the Foregoing Facts, The Court finds that the Plaintiffs are entitled to Judgment as prayed."

Clearly, the above findings of fact are not based upon any evidence in the case for the simple reason that the court had refused to permit any of plaintiffs' witnesses to testify and had refused plaintiffs the right to submit any evidence in support of their complaint.

Next, Judge McKinnon made and caused to be entered a decree in accordance with the written findings of fact and conclusions of law as follows:

"It is Therefore Ordered, Adjudged and Decreed: That the proceedings of the Defendants purporting to create Special Improvement District No. 294 of the City of Kalispell, Montana, are invalid and of no effect, and the Defendants are hereby restrained and enjoined permanently from any and all further acts and proceedings therein.

"It is Further Ordered, That Plaintiffs herein recover their costs and disbursements taxed at $65.85."

The ruling and order of the trial judge sustaining the defendants' objections to the introduction of any evidence was never reconsidered, recalled or rescinded. Hence, there was no evidence before the court to sustain its findings of fact and conclusions of law or the decree that it assumed to enter.

If, as Judge McKinnon ruled, plaintiffs' complaint was so defective as to state no cause of action, there was and is nothing upon which to base or sustain a decree in plaintiffs' favor.

Such findings, conclusions and decree were and are wholly null and void since Judge McKinnon, by his final actions in this cause has indicated that he was in error in ruling as he did on the defendants' objections to the introduction of evidence, and in holding that the complaint failed to state a cause of action. In this particular we think he was correct.

However, to correct this obviously erroneous ruling on defendants' objections to the introduction of evidence, it is first necessary to return to that stage of the proceeding where the error occurred and to set the cause for another trial after first reconsidering and annulling the ruling excluding the introduction of any other evidence. There has never been a trial. None of the plaintiffs' witnesses were permitted to testify. The plaintiffs were not allowed to introduce any documentary evidence. The complaint in our judgment states a good cause of action and they were entitled, under the law, to have an opportunity to place their witnesses on the stand, to introduce such other evidence as they have and then, and not until then, is the trial judge warranted in making findings of fact, conclusions of law, and in making and entering decree and judgment herein.

Judge King correctly held that the complaint states a good cause of action; Judge Fall correctly held that the defendants answer states a good defense; the pleadings in the case thereupon became, were and are settled and the case was ready for trial.

Judge McKinnon was called in to preside at the trial at which all of the parties agreed that the case was ready for trial. Instead at the outset the defendants prevented the trial by challenging the sufficiency of the initial pleadings, namely that of plaintiffs' complaint. After it had been determined to state a cause of action by Judge King, the then judge of the District Court of Flathead County, Judge McKinnon, who was invited to and did assume jurisdiction, took the lawsuit and pleadings as they had been ruled upon and determined.

Judge McKinnon erroneously ruled that the complaint was

insufficient and each and all of his acts subsequent to such ruling were and are null and void, for without a good complaint entitling the plaintiffs to relief, none can be lawfully granted to him.

Therefore, it is the duty of this court to order all purported rulings, orders, judgment and decree made and entered by Judge McKinnon in this case in the district court, be set aside as null and void and the case remanded for trial, and thereby provide the plaintiffs and defendants with their constitutional and statutory rights to their day in court and a fair trial.