134

364 A.2d 1277.

WILLIAM T. SWEETMAN *vs.* TOWN OF CUMBERLAND *et al.*

OCTOBER 18, 1976.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

BEVILACQUA, C. J. This is an appeal from a judgment of the Superior Court dismissing an action to declare an amendment to the Zoning Ordinances of the Town of Cumberland invalid and enjoin enforcement.

The principal issues presented are whether the town council gave sufficient notice of the proposed amendment, whether the amendment was made in accordance with the "comprehensive plan" of the town, and whether G. L. 1956 (1970 Reenactment) §45-24-4.1, as amended by P. L. 1974, ch. 203, §1, which authorizes conditional zoning by town or city councils, violates constitutional guarantees of due process and equal protection. We uphold the validity of the statute and affirm the judgment of the Superior Court.

In May 1974, John D. and Dionysia C. DeStefano, Henry J. and Beverly F. Keigwin, the owners of 28 acres of land located on Bear Hill Road in the town of Cumberland, submitted a petition requesting the town council to rezone their land from "Industrial A" to "Residence C", to permit the construction of an apartment complex. This land was then part of a larger tract classified for light industry which lay adjacent to a neighborhood of single-family residences. No part of the tract had ever been developed for industry, and most of the land was not being used in any way at the time the proposal was submitted. The plaintiff, William T. Sweetman, owns a residence located in the part of the industrial zone that was not reclassified.

A public hearing was scheduled and notices were sent to neighboring property owners and published in local newspapers pursuant to §45-24-4.1. Many persons spoke in opposition to the zoning amendment, including plaintiff and Robert A. Harpell, a professional planner. Two witnesses testified in favor of the amendment. On June 28, the council voted to rezone the land to "Residence C", but placed several special limitations on the use of the land. As enacted, the amendment provided, *inter alia*, that no more than 350 units could be constructed and that the only access to the development was to be off Bear Hill Road.[1]

[1]The Cumberland zoning amendment provided in relevant part:
"* * * said lots presently designated "INDUSTRIAL A", be and hereby are designated "RESIDENCE C", *LIMITED AS FOLLOWS*:
1. Land use for apartment buildings only in accordance with the Cumberland Zoning Ordinance and State Statute.
2. The apartment complex shall not exceed three hundred and fifty (350) bedroom units, consisting of approximately one hundred forty (140) two-bedroom-units and two hundred and ten (210) single-bedroom-units.
3. There shall be a fifty (50) foot buffer zone within all the boundaries of the premises hereby rezoned. The buffer zone shall

The plaintiff then brought this action to enjoin enforcement of the amendment and declare it invalid, alleging (1) that inadequate notice was provided, (2) that the amendment constituted illegal "spot zoning" because it did not conform to the "comprehensive plan" of the town, (3) that the council violated §45-22-6 by not referring the proposal to the town planning board, and (4) that the conditions imposed upon the rezoned tract were not authorized by §45-24-1 and violated the federal constitutional guarantees of due process and equal protection of the laws and the State constitutional guarantee of fair distribution of the benefits and burdens. The trial justice determined that Sweetman had standing to challenge the validity of the ordinances since he had alleged an injury in fact in the form of interference with enjoyment of his land. Sweetman introduced documentary evidence and called various witnesses, including Robert A. Harpell, who had testified against the amendment, before the town council, and whom the judge determined to be an expert on the subject of land-use planning. At the close of plaintiff's case, defendants moved for an involuntary dismissal under Super. R. Civ. P. 41(b)(2), on the ground that plaintiff had not

---

contain the trees and shrubs presently growing therein or such additional or different landscaping as the owners of the premises shall from time to time provide. The purpose of the buffer zone shall be to provide green and wooded areas within the perimeters of the premises. Grass shall be cultivated and maintained neatly in said buffer zone. No structure, building or parking area shall be erected or constructed in said buffer zone. No parking of cars shall be permitted in the buffer zone; nor shall said zone serve any purpose except as a belt of natural beauty. The buffer zone shall be continually maintained in a neat, tidy and attractive condition by the owners of the premises.

4. There shall be one access and egress road to the complex. The origin of this road shall be on the north side of Bear Hill Road approximately three hundred twenty feet (320') west of the east property line of the complex.

5. No access or egress to be on Crestwood Court or Standring St."

established facts upon which relief could be granted. The trial justice granted the motion and plaintiff now appeals.

I.

The plaintiff raises several questions regarding the sufficiency of the notice of the proposed amendment provided by the town council.

First, he contends that the notice mailed to the neighboring landowners did not adequately identify the land in question because it did not include a map or locus plan and did not describe the land by metes and bounds.[2] The notice plaintiff did receive consisted of a letter and a copy of the petition before the council.

The letter advised recipients of the time and place of the hearing on the enclosed petition for the zoning amendment and stated that this notice was directed to landowners within a radius of 200 feet of the parcel for which rezoning was sought. It further advised recipients of their

---

[2]The requirement of notice to neighboring landowners is set forth in G. L. 1956 (1970 Reenactment) §45-24-4.1, as amended by P. L. 1974, ch. 203, §1, which provides in relevant part:

"No such ordinance making a specific change in the zoning map shall be enacted, amended or repealed until after a public hearing, at which, opportunity shall be given all persons interested to be heard, has been held upon the question of the enactment, amendment or repeal of such ordinance, before the city or town council, or a committee or commission authorized by such city or town council to investigate and make recommendations concerning such proposed ordinance, as the case may be, who shall first give written notice of the time and place of such public hearing, and the nature and purpose thereof, to all owners of any real property within two hundred (200) feet of the perimeter of the real property which is the subject matter of the proposed amendment, enactment or repeal, by registered or certified mail at least seven (7) days before the date of said hearing and by publication of such notice in a newspaper of general circulation within such city or town at least once each week for two (2) successive weeks prior to the date of such hearing."

right to be present and opportunity to be heard at the hearing.

The enclosed petition provided:

"John D. DeStefano et ux., Dionysia C. DeStefano, taxpayers and citizens of the Town of Cumberland, residing at 15 Thomas Leighton Boulevard, in said town, and Henry J. Keigwin et ux., Beverly F. Keigwin, taxpayers and citizens of said town, residing on Old Hickory Drive, in said town, represent to this Honorable Body, as follows:

"That they are the owners, in fee simple, of approximately twenty-eight (28) acres of land on the northerly side of Bear Hill Road, a public highway in said town, laid out and designated as Lots numbered 805 and 807 on Assessor's Plat No. 21 and Lot numbered 24 on Assessor's Plat No. 17. (Said land is more particularly described in Exhibit "A", hereunto annexed).

"All said lots are presently zoned Industrial A.

"That your petitioners are desirous of developing said real estate for residential purposes, to wit: for an apartment house complex.

"That your petitioners submit herewith a plan entitled "200' Locus Plan, Assessor's Plats 17 and 21, Cumberland, Rhode Island, Land of H. J. Keigwin Et Ux. & J. D. DeStefano Et Ux., Environmental Engineering Corp., Cumberland, Rhode Island, Scale 1" = 160', Drawn, Checked and Approved by S. P. Irza, May 17, 1974, Locus Drawing No. LP-1", hereunto annexed and marked Exhibit "B".

"That your petitioners, for purposes of notice, also submit herewith a list of the abutters within two hundred (200) feet of the perimeter of said land, giving names and addresses, which list is marked Exhibit "C", hereunto annexed.

"WHEREFORE, your petitioners pray that the Honorable Town Council rezone the twenty-eight (28) acres belonging to the petitioners, on the northerly side of Bear Hill Road, in said town, as Residence C instead of Industrial A."

We believe this was adequate to meet the notice requirements of §45-24-4.1. In so holding we rely upon the test previously articulated by this court in construing the notice requirements of §§ 45-24-18 and 45-24-4. That is, it was sufficient to inform an ordinary layman lacking expertise in zoning matters of the property affected and the changes sought. *Golden Gate Corp.* v. *Town of Narragansett,* 116 R.I. 552, 359 A.2d 321 (1976); *Federal Bldg. & Dev. Corp.* v. *Town of Jamestown,* 112 R. I. 478, 312 A.2d 586 (1973); *Carroll* v. *Zoning Bd. of Review,* 104 R. I. 676, 248 A.2d 321 (1968).

In *Federal Bldg. & Dev. Corp.* v. *Town of Jamestown, supra,* we decided that the notice required by §45-24-4 for a proposed general amendment to a zoning ordinance should be considered together with §45-24-18, which sets forth the notice requirements for a zoning variance or exception, since the sections are not inconsistent with each other, relate to the same subject matter, and are in *pari materia. Id.* at 485, 312 A.2d at 590. Similarly, we are of the opinion that §45-24-4.1 should be considered together with §45-24-18 and §45-24-4. Like §45-24-4, §45-24-4.1 contemplates notice where the proposed zoning changes will result from legislative action to amend the ordinance rather than from action by the board of review to except specific property  without changing the ordinance itself. However, §45-24-4.1 contemplates notice given with respect to specific tracts or parcels of land, rather than the notice with respect to a general amendment affecting overall zoning patterns contemplated by §45-24-4. *See Federal Bldg. & Dev. Corp.* v. *Town of James-*

*town, supra* at 485, 312 A.2d at 590. Moreover, the language of §45-24-4.1 expressly requires notice of the nature and purpose of the change.

In *Carroll* v. *Zoning Bd. of Review, supra,* the petitioners contended that the notice did not meet the requirements of notice for a proposed zoning variance set forth in §45-24-18. We held there that the following notice, which is very similar to the one in question now, was sufficient to meet the requirement that the notice advise of the precise character of the relief and the specific property involved. The *Carroll* notice stated:

> " 'You are hereby notified that Helen F. Stomberg of 106 Rolfe Street, Cranston, R. I. has filed an application for permission to be relieved from sections 52-A, 54-A-3 and 23-A-3(a) of the Zoning Ordinance in the proposed construction of a service station located at 769 Hope Street, Lots 154 and 134 on Assessor's Plat 93 in a Commercial C-2 Zone; approximately 45' x 41' — 10" on lot 134 and four (4) 5,000 gallon underground storage tanks on Lot 154.' " *Carroll* v. *Zoning Bd. of Review, supra* at 678 n.1, 248 A.2d at 323 n.1.

The notice in this case states that the nature of the proposed change is from "Industrial A" to "Residence C" for the purpose of constructing an apartment complex. Although it does not identify the property in question by address, it states that the property is located on Bear Hill Road and notes that the property is located within 200 feet of the landowner receiving the notice. Thus, it alerts the landowner that the proposed amendment would affect property very close to his own. If he wishes to ascertain more precisely which property is affected, he may inquire further with the town clerk. *See Golden Gate Corp.* v. *Town of Narragansett, supra.* This case is very different from *Federal Bldg. & Dev. Corp.* v. *Town of Jamestown, supra,* in which we held that the notice was not sufficient.

In that case the town made no effort whatsoever to identify the property affected by the proposed amendment.[a]

Second, all the notices mailed by the town of Cumberland were addressed "[name of husband] et ux." The plaintiff claims that this did not give adequate notice to wives who were co-owners of the property. We do not agree. At least where town officials do not have actual or constructive notice that the wife lives at a separate address, this form of notice, while not the most desirable, is legally sufficient. The purpose of the notice requirement is to alert the landowner that a proposed amendment to the zoning ordinances may affect his or her property and that he or she has a right to speak upon the matter at a public hearing. We do not believe that a wife's lack of actual understanding of the words "et ux." will substantially affect her opportunity to become aware of the proposed amendment and her right to be heard. *See generally Shaw* v. *City of Kalispell*, 135 Mont. 284, 340

[a]The notice in *Federal Bldg. & Dev. Corp.* v. *Town of Jamestown*, 112 R. I. 478, 312 A.2d 586 (1973) stated:

"'Public hearing upon the question of the enactment of a proposed general amendment to the Zoning Ordinance by the Town Council of the Town of Jamestown, Rhode Island.

Notice is hereby given in accordance with Chapter 45-24-4 of the General Laws of Rhode Island 1956 as amended, that the Town Council of the Town of Jamestown will hold a public hearing at the Memorial Town Hall and Community Center, Conanicus Avenue, Jamestown, Rhode Island, on Monday, February 16, 1970, at 8:00 P.M. upon the question of the enactment of a proposed general amendment to the zoning ordinance of the Town of Jamestown.

The proposed general amendment to the zoning ordinance and copies of said general amendment will be on file in the office of the Town Clerk, 71 Narragansett Avenue, Jamestown, Rhode Island, and may be seen and information obtained relative to its provisions at that office daily during business hours.

At said hearing, opportunity shall be given all persons interested to be heard upon the matter of the proposed general amendment to the ordinance.'" *Id.* at 481-82, n.2, 312 A.2d at 588-89 n.2.

P.2d 523 (1959). The cases relied upon by plaintiff are not on point.

Third, the plaintiff claims that the trial justice erred in not finding that the notices published in local newspapers pursuant to §45-24-4.1 were printed in such fine type "* * * that they were illegible as a matter of law, ambiguous, imprecise, unclear, vague and unintelligible to an average citizen at large." We have examined the advertisements in question and find this argument to be without merit.

## II.

The plaintiff's second set of arguments relate to whether the amendment was made in accordance with the "comprehensive plan" of the town of Cumberland. The enabling act which permits municipalities to establish and amend zoning ordinances requires that all such acts follow a "comprehensive plan". Section 45-24-3. This court has held that an amendment which is not consistent with such a zoning plan is illegal. *Cianciarulo* v. *Tarro*, 92 R. I. 352, 168 A.2d 719 (1961).

The plaintiff argues that the trial justice erred in finding that the evidence was not sufficient to prove the amendment violated the town's comprehensive plan. We do not agree.

The sole witness called by plaintiff was Robert A. Harpell, whom the trial justice accepted as an expert on land-use planning. Harpell testified that the amendment permitting the 350-unit project was inconsistent with principles of sound planning because the development would create more traffic than Bear Hill Road could safely handle, would cause serious water runoff problems, and would leave too small an amount of land classified "Industrial A" to be effectively developed for that purpose. Harpell stated for instance that Bear Hill Road was so narrow that

fire and other emergency vehicles would not be able to gain quick access to the development.

The defendants did not introduce any evidence. Their attorneys did cross-examine Harpell, who admitted that the water runoff problems would be similar if the land were developed for light industry as it had previously been classified. In addition, the minutes of the hearing before the town council were admitted. The minutes contained a summary of testimony that had been offered in favor of the proposed amendent. Joseph L. Savick, the Director of Planning and Urban Development for the City of East Providence, had testified that he thought the proposed apartments would be less objectionable to the surrounding neighborhood than industrial development. He had also stated that he believed Bear Hill Road could be widened. Frank A. Tibaldi, a Traffic Engineer for the City of Providence had testified that he did not believe the proposed 350-unit development would cause excessive congestion or a safety hazard on Bear Hill Road.

A plaintiff faces a heavy burden in attempting to invalidate a zoning ordinance on this basis. A court may strike down an amendment only if the amendment bears no reasonable relationship to the public health, safety or welfare.

> "The concept of comprehensiveness in zoning ordinances, as we understand it, requires only that the scheme or formula of the zoning regulations reflect the necessary relation between the pertinent exercise of the zoning power and the grounds upon which the police power of the state may properly be exercised. The controlling question is not whether the amendment violates the comprehensive plan of the instant ordinance in that it establishes a business district on land lying more than 300 feet from an arterial highway, but whether such establishment of a business district bears a reasonable relationship to the public health, safety, or welfare so as to justify the regula-

tion inhering therein." *Hadley* v. *Harold Realty Co.,* 97 R. I. 403, 409, 198 A.2d 149, 153 (1964).

Futhermore, an amendment is presumed to be valid and the plaintiff must demonstrate that no such reasonable relationship exists. *Carpionato* v. *Town Council,* 104 R. I. 490, 244 A.2d 861 (1968). At this state of the proceedings the burden is even greater because we will not overturn the determination of the trial justice unless he overlooked or misconceived material evidence, or he is clearly wrong. *Cianciarulo* v. *Tarro, supra.*

We do not believe the trial justice committed such error when he found that the profferred evidence was not sufficient to demonstrate that the amendment bore no reasonable relationship to the public health, safety or welfare. We think that the trial justice was correct when he stated:

> "There is no doubt that the construction of an apartment complex on the rezoned 28 acres will generate increased traffic on Bear Hill Road, and will create greater risks to children and others now using that highway than those to which they are presently subjected. Such a development is inevitable, however, with any use of this undeveloped parcel, whether for industrial purposes, for apartments, or for one family homes. How much additional congestion is too much? It is clear that the power to make such a judgment and the other judgments involved in this matter, is in the Town Council. The only limitation is that their enactments must bear a reasonable relation to the public interest, and thus fall within the police power. *Cianciarulo* v. *Tarro,* 92 R. I. 352, 359.

> "The same is true with reference to the assertion that pollution will be caused by the rainwater runoff from the apartment parking lots, although it is not clear how much more pollution will be caused by an apartment house parking lot than would be caused by an industrial plant parking lot. Even assuming, *arguendo,* that the pollution would be greater, such a showing would not necessarily demonstrate that the enact-

ment of the rezoning ordinance did not bear a reasonable relation to the public interest."

This is not the archetypal case of illegal spot zoning in which the council singles out a solitary lot in a solidly residential neighborhood and reclassifies it for commercial or industrial use. In such a case, the incompatibility of the new classification with the neighborhood, the small size of the parcel reclassified and the lack of any important difference between the land reclassified and that not rezoned may indicate that the amendment was wholly arbitrary or may create a strong inference that the council acted out of personal favoritism and not in furtherance of the general welfare. *See, e.g., D'Angelo* v. *Knights of Columbus Bldg. Ass'n,* 89 R. I. 76, 151 A.2d 495 (1959). Where, however, the facts and circumstances of the individual case do not raise such inferences, the presumption of validity of the action of the town council in amending a zoning ordinance includes the presumption that the amendment was in accordance with the comprehensive plan. *Willey* v. *Town Council,* 106 R. I. 544, 261 A.2d 627 (1970).

The circumstances of this case do not require any inference of illegal spot zoning. The land in question, a 28-acre tract, had been previously classified light industrial, but had not actually been developed for that purpose. The council may have concluded that it was unsuitable for industry. The council then may have reasonably concluded that the public interest would be served by reclassifying the land in such a way that it could profitably be developed. Permitting the building of apartments in such circumstances would not become arbitrary merely because single-family dwellings would cause less congestion and pollution.

The plaintiff next argues that the zoning amendment is unlawful because it conflicts with the "Cumberland Com-

prehensive Community Plan," which was developed by the Rhode Island Development Council and adopted with minor changes by the Cumberland Planning Board. The plaintiff argues that this plan is the "comprehensive plan" referred to in §45-24-3 and that all zoning amendments must conform with this plan. We need not inquire whether the zoning amendment does in fact conflict with this master plan, because we believe §45-24-3 does not require that zoning ordinances conform with the master plan adopted by the planning board.

The rule is that the amendment is required to conform to the comprehensive plan of zoning in effect in the community. *Cianciarulo* v. *Tarro, supra*. As noted above, this court has stated that the meaning of a comprehensive plan for purposes of §45-24-3 is only that the ordinance bear a reasonable relationship to the public health, safety and welfare. *Hadley* v. *Harold Realty Co., supra* at 409, 198 A.2d at 153. Furthermore, several courts have directly held that a municipal legislative body in enacting a zoning ordinance in keeping with a "comprehensive plan" is not bound by the terms of such a master plan. *Nottingham Village, Inc.* v. *Baltimore County*, 266 Md. 339, 292 A.2d 680 (1972); *accord, Saenger* v. *Planning Comm'n*, 9 Pa. Commw. 499, 308 A.2d 175 (1973); 1 Rathkopf, *The Law of Zoning and Planning*, §12.05 at 12-31 (4th ed. 1975); *see Ward* v. *Knippenberg*, 416 S.W. 2d 746 (Ky. 1967); *cf. Toole* v. *May-Day Realty Corp.*, 101 R. I. 379, 223 A.2d 545 (1966).

The plaintiff also contends that the zoning amendment is invalid because the proposal was not submitted to the planning board for a recommendation. We cannot agree. While reports on proposed amendments to the planning board's master plan are required of that agency under §45-22-6, the planning board's function with respect to zoning matters is governed by §45-22-7(C). Section 45-

22-7(C) does not *require* that such proposals be submitted; it merely provides that the board must make recommendations when proposals are submitted:

> "A planning board or commission shall submit an advisory opinion and recommendation on all zoning matters referred to it under the provisions of the city or town zoning ordinance and shall report on any other matter referred to it, by the city or town council, the chief executive or the appointing authority." Section 45-22-7(C).

The plaintiff has failed to demonstrate that the town council violated any statute or municipal ordinance by not referring the amendment to the board. Courts have held that the municipal legislative body must refer proposed amendments to the local planning agency only where the relevant statutory provision expressly states that such referral is mandatory. 1 Rathkopf, *The Law of Zoning and Planning*, §12.05 at 12-31 (4th ed. 1975). *Compare Saenger* v. *Planning Comm'n, supra, with Fasano* v. *Board of County Comm'rs*, 264 Ore. 574, 507 P.2d 23 (1973).

### III.

The plaintiff's third series of arguments relates to the conditions imposed on the use of the land in conjunction with the rezoning. The imposition of such conditions is authorized by §45-24-4.1, which provides in relevant part:

> "Provided, however, notwithstanding the provisions of §45-24-2 the town or city council may in approving a zone change limit such change to one (1) of the permitted uses in the zone to which the subject land is rezoned, and impose such conditions upon the use of land as it deems necessary. The responsible city or town official shall cause the limitations so imposed to be clearly noted on the zoning map."

The plaintiff first argues that §45-24-4.1 may only be read to authorize the imposition of conditions where the municipality applies those conditions to all land bearing the same zoning classification. To do otherwise, he argues,

would violate the "uniformity" requirement of §45-24-2, which provides that all zoning regulations "* * * shall be uniform for each class or kind of buildings throughout each district * * *." We find this argument unpersuasive.

Section 45-24-4.1 states that a council may "* * * limit *such change* to one (1) of the permitted uses in the zone to which the *subject land* is rezoned * * *." (Emphasis added.) We believe this language clearly indicates that the council may limit the application of the conditions to those parcels which are rezoned by amendment, and that identical conditions need not be imposed on land in the same use category, but not covered by the amendment. In addition, all of the reported cases upholding conditional zoning have dealt with attempts to impose individualized restrictions not applying to all the land similarly classified. We believe the Legislature was aware of the customary meaning of the term when it authorized conditional zoning. Indeed, the very concept of conditional zoning seems to mean individualized restrictions, for if a council wished to limit all lots in the same class equally, it need only enact a more detailed general ordinance. Insofar as there is any conflict with the uniformity requirement, §45-24-4.1 must prevail, as it expressly provides that councils shall have the power to impose conditions "notwithstanding the provisions of §45-24-2."

The plaintiff next argues that if §45-24-4.1 is read to permit the imposition of differing conditions upon parcels of land bearing the same land-use classification, it must be declared unconstitutional. So construed, he argues, the statute would permit unlawful discrimination between property owners, and would thus constitute a denial of equal protection of the laws as guaranteed by the four-

teenth amendment of the Federal Constitution and article I, §2 of the State Constitution.[4]

It is well established that where it has not been shown that a "fundamental right" has been affected or that the legislation sets up a "suspect classification," a statute will be invalidated on equal protection grounds only if the classification established bears no reasonable relationship to the public health, safety, or welfare. *McGowan* v. *Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). Similarly, where the challenged statute is not a capricious exercise of the lawmaking power, there is no violation of the Rhode Island Constitution, article I, §2, which is essentially a guarantee of equal protection of the laws. *Gomes* v. *Bristol Mfg. Corp.,* 95 R. I. 126, 184 A.2d 787 (1962); *Doherty* v. *Town Council,* 61 R. I. 248, 200 A. 964 (1938). The plaintiff argues, however, that this statute permits the municipal councils to establish classifications which bear no such reasonable relationship to a valid legislative purpose. We do not agree.

First, imposing differing conditions on the property in the same land-use category is not a wholly arbitrary differentiation per se. Owners of property in the same land-use category are not necessarily "similarly situated" so that they must be treated identically under the equal protection clause. The particular use of one parcel, by virtue of the property's location, may have a greater impact on surrounding properties than that of another parcel in the same zoning district. In addition, two parcels may have been classified at different times when the needs of the municipality differed. Different pieces of property

---

[4]This court has not passed upon the validity of conditional zoning either before or after the enactment of the provision here which expressly authorizes it. Although both *Arc-Lan Co.* v. *Zoning Bd. of Review,* 106 R. I. 474, 261 A.2d 280 (1970), and *Nicholson* v. *Tourtellotte,* 110 R. I. 411, 415, 293 A.2d 909, 911 (1972), involved conditional zoning, in each instance we expressly declined to rule whether the practice was valid.

may also have physical characteristics which differ enough to require some minor differences in use restriction, while still permitting the land to be placed in the same general category.

Second, while the imposition of differing conditions is one means by which arbitrary discrimination may be accomplished, that kind of discrimination is not authorized, but rather is illegal under the statute itself.

> "It is well settled that a local legislature has no authority to enact zoning regulations or to amend existing zoning regulations other than that conferred upon it in the pertinent provisions of the enabling legislation." *Cianciarulo* v. *Tarro,* 92 R. I. at 358, 168 A.2d at 722.

Section 45-24-3 of the enabling act, which requires zoning regulations to be made in accordance with a comprehensive plan, precludes any arbitrary or discriminatory exercise of the amendatory power. *Cianciarulo* v. *Tarro, supra.* Therefore an action will lie to invalidate a conditional amendment on the ground that it is arbitrary and not in keeping with the comprehensive plan because it bears no reasonable relationship to the public health, safety and welfare. We assume that in adopting the conditional zoning provision, the Legislature intended no abrogation of the basic and universally accepted principle that all zoning must be reasonably related to the public health, safety and welfare.[5] Thus, we must conclude that §45-24-4.1 is not unconstitutional on its face.

---

[5]Every court which has upheld conditional zoning has taken pains to point out that use of the device does not authorize a municipal council to enact an ordinance which is illegal in any other respect. *See, e.g., State ex rel. Myhre* v. *City of Spokane,* 70 Wash.2d 207, 422 P.2d 790 (1967).

In *Nicholson* v. *Tourtellotte,* 110 R. I. 411, 293 A.2d 909 (1972), this court, while not reaching the issue of the validity of conditional zoning, noted the position of the Supreme Court of the State of Washington that

> "* * * An amendment to a zoning ordinance and a concomitant agreement should be declared invalid only if it can be shown that

The plaintiff next argues that §45-24-4.1 constitutes a denial of due process of law because the provision "* * * the town or city council may * * * impose such conditions upon the use of land as it deems necessary" is wholly devoid of limiting standards and is so vague that it permits municipal councils to impose conditions in an arbitrary and capricious manner. We find this argument unpersuasive. As noted above, the provision in question merely permits the use of a new form of zoning ordinance. It does not remove the requirement that every ordinance and amendment conform to a comprehensive plan. We believe this independent requirement provides adequate protection against arbitrary and capricious use of the power to impose conditions.

The plaintiff raised several additional arguments in his brief. We have carefully considered these claims. We believe they are without merit and thus do not require discussion here.

The plaintiff's appeal is denied and dismissed and the judgment appealed from is affirmed.

*Abatuno & Chisholm, Michael A. Abatuno,* for plaintiff.

*Julius C. Michaelson,* Attorney General, *Allen P. Rubine,* Special Asst. Attorney General, *Francis R. Foley,* for defendants.

---

there was no valid reason for a change and that they are clearly arbitrary and unreasonable, and have no substantial relation to the public health, safety, morals, and general welfare, or if the city is using the concomitant agreement for bargaining and sale to the highest bidder or solely for the benefit of private speculators.' " *Id.* at 415, 293 A.2d at 911.
*Accord, Pecora* v. *Zoning Comm'n,* 145 Conn. 435, 144 A.2d 48 (1958); *Hudson Oil Co. of Missouri* v. *City of Wichita,* 193 Kan. 623, 396 P.2d 271 (1964); *cf. Sylvania Elec. Prods., Inc.* v. *City of Newton,* 344 Mass. 428, 183 N.E.2d 118 (1962). *See generally* Shapiro, *The Case for Conditional Zoning,* 41 Temp. L.Q. 267 (1968), and the cases cited therein. We assume that in adopting conditional zoning the Legislature also meant to adopt the commonly understood limitations on that power.