372 A.2d 1269.

WILLIAM G. BARBER *et al. vs.* TOWN OF
NORTH KINGSTOWN *et al.*

MAY 2, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

170

DORIS, J. This is a petition for a writ of certiorari brought pursuant to P.L. 1948, ch. 2079,[1] §9, requesting review of a certain amendment to the Zoning Ordinance of the Town of North Kingstown, the petitioners alleging said amendment to be illegal and void.

An application was made by the Essex Village Company to the Town Council of North Kingstown on October 4, 1976, for an amendment to the local zoning ordinance. The requested amendment was to change the zoning districts of lots 54, 55 and 202 of assessor's plat 146 from village residential to multi-family dwelling for the purpose of constructing housing for the elderly. Pursuant to P.L. 1948, ch. 2079, §3,[2] notice of the proposed amendment was published in *The Standard-Times,* and notice was also sent by registered mail to owners of property within 200 feet of

---

[1] Public Laws 1948, ch. 2079, is entitled: "An act to authorize the town of North Kingstown to enact zoning and building ordinances." It is one of a number of special zoning enabling acts which are to be distinguished from the general zoning enabling act contained in G.L. 1956 (1970 Reenactment) §45-24-1 et seq. Section 9 of this special act allows aggrieved parties to petition directly to the Supreme Court by way of certiorari to review decisions of the town council. *See Golden Gate Corp.* v. *Town of Narragansett,* 116 R.I. 552, 554-55, 359 A.2d 321, 323 (1976).

[2] Public Laws 1948, ch. 2079, §3 reads as follows:

"No such ordinance shall be enacted, amended or repealed until after a public hearing has been held upon the question of the enactment, amendment or repeal of such ordinance, before said town council or a committee or commission authorized by said town council to investigate and make recommendations concerning such proposed ordinance, who shall first give notice of such public hearing, specifying the time and place of such hearing, by publication in a newspaper printed in the county of Washington at least once each week for 3 successive weeks prior to the date of such hearing, at which hearing opportunity shall be given all persons interested to be heard upon the matter of the proposed ordinance."

the subject lots. A hearing was held before the town council on November 15, 1976, wherein the council voted to approve the amendment. Thereafter, a number of landowners petitioned for a writ of certiorari to overturn the ruling of the town council. We granted the petition on December 17, 1976, and ordered the papers certified to this court.

The petitioners' arguments in this case may be divided into three parts. The first is that the published notice was substantially deficient in not meeting legal requirements; the second, that the hearing was not fair and impartial; and the third, that the amendment was not a proper one in conformance with a comprehnsive plan.

## I. The Notice

The first question we address is the sufficiency of the notice since it is a jurisdictional issue and the acquisition of jurisdiction by the town council to rule on the proposed amendment depended on strict compliance with the notice requirements. The petitioners do not dispute the fact that the notice was properly published in *The Standard-Times* and mailed to those who owned land within 200 feet of the subject property. Instead they say that the *contents* of both the published and mailed notice were insufficient as a matter of law.[*]

---

[*]The published notice read as follows:

"TOWN OF NORTH KINGSTOWN
NOTICE OF PUBLIC HEARING

"NOTICE IS HEREBY GIVEN that the Town Council of the Town of North Kingstown Rhode Island, will conduct a public hearing at the Senior High School, 150 Fairway, North Kingstown, Rhode Island, at 7:30 o'clock p.m., on Monday, November 15, 1976, on the application of Essex Village Company, for an amendment to Chapter 17 of the Revised Ordinances (1974), of the Town of North Kingstown, as amended, entitled Zoning, to change from Village Residential to Multi-family Dwelling District, those certain lots or parcels of

They first argue that the notice of the proposed change included a nonexistent designation of a zoning classification and therefore did not inform persons reading the notice as to the type of amendment actually submitted. In the published notice, the requested change was "from Village Residential to Multi-family Dwelling District"; in the mailed notices, the change was listed as "from Village Residential to Multi-Family Dwelling"; and in §17-2-4 of the zoning ordinance, the applicable section is merely entitled: "Multi-family."[4] The petitioners contend that this confusion of terms makes the notice invalid as not being intelligible to the average person. We disagree.

The term "multi-family" is used in only one section of the zoning ordinance and we see no confusion as to its meaning whether the words "residential", "dwelling", "district" or some combination of the three are appended to it. Any reasonable person who read a proposed amendment changing the zoning of a parcel of land from "village residential" to "multi-family dwelling district" would have no difficulty in understanding that the purpose of the proposal was to allow multi-family dwellings or residences. The fact that the exact title as used in chapter 17 of the zoning ordinance was not also used in the published notice is not significant. In the context of this section of the zoning ordinance the words "dwelling" and

---

land owned by Anna M. O'Shea and recorded as Assessor's Plat 146, Lots 54, 55 and 202.

Lillian L. Hackett, C.M.C.
Town Clerk"

The mailed notices had substantially the same information, except that the property was further identified as being on the "northerly side of Newcomb Road," and the proposed change was to "multi-family dwelling."

[4]The body of the section refers to "multi-family residential district" as well as to "multi-family dwelling."

174

"residence" are virtually synonymous. The use of one in place of the other would not put a reasonable person reading the notice "in doubt concerning what was being proposed." *Carroll v. Zoning Bd. of Review*, 104 R.I. 676, 679, 248 A.2d 321, 323 (1968).

As to the location of the property, the published notice referred only to the assessor's plat and lot numbers, and petitioners contend that this was an insufficient description. However, while we agree that the street addresses would be helpful to many people unfamiliar with assessor's descriptions, we recognize that they are not required. In *Signore v. Zoning Bd. of Review*, 98 R.I. 26, 199 A.2d 601 (1964), we construed the notice requirement of G.L. 1956 (1970 Reenactment) §45-24-18, and said:

> "It was by the designation of the assessor's plat and lots that the property would be recognized by the public and insofar as notice of the property under consideration constitutes the issue, the property was fully described and, in our judgment, proper constructive notice was given to the public within the meaning of G.L. 1956, §45-24-18." *Id.* at 32, 199 A.2d at 605.

We see no reason why this is not also true under P.L. 1948, ch. 2079, §3.

Thus we find that the notice was adequate to meet the requirements of P.L. 1948, ch. 2079, §3. In so ruling we are merely following the pattern established in a number of our zoning cases when we construed the various notice provisions in the general zoning enabling act. The basic rule as to notice has been that the notice must be "sufficient to inform an ordinary layman lacking expertise in zoning matters of the property affected and the changes sought." *Sweetman v. Town of Cumberland*, 117 R.I. 134 364 A.2d 1277, 1283 (1976). *Accord, Golden Gate Corp. v. Town of Narragansett*, 116 R.I. 552, 359 A.2d 321 (1976); *Federal Bldg. & Dev. Corp. v. Town of James-*

*town*, 112 R.I. 478, 312 A.2d 586 (1973); *Carroll* v. *Zoning Bd. of Review, supra.* The notice here meets that test.

The petitioners, however, go further and say that the notice also had to be in conformity with §45-24-4.1, as amended, which requires publication of proposed amendments in their entirety at least once. Without deciding whether the publication of the proposal met the standards of §45-24-4.1, we note that those standards are inapplicable in the present case since North Kingstown is bound only by its special enabling act. See notes 1 and 2, *supra.* Section 45-24-21 makes this clear, It says:

> "Special statutes controlling.—The provisions of this chapter are subject to the provisions of any special statutes respecting any particular town or city, none of which are hereby repealed, except as otherwise provided."

In referring to G.L. 1938, ch. 342, which was the predecessor of §45-24-1 et seq., we said:

> "That chapter does not apply to North Kingstown in view of the fact that the legislature has enacted a special enabling act solely for its benefit." *Baker* v. *Zoning Bd. of Review,* 82 R.I. 432, 436, 111 A.2d 353, 355 (1955).

In view of this, we see no reason why the notice requirements as contained in §45-24-4.1 should apply to a town with a special enabling act. Therefore we find that the notice requirements contained in §3 of the special enabling act were met and the town council therefore had jurisdiction to hold a hearing on the proposed amendment.

## II.   The Hearing

The petitioners also claim that the hearing before the town council was conducted in an unfair and improper manner, and therefore they were deprived of their rights. After carefully reading the transcript of the hearing, we do not come to the same conclusion as petitioners. In fact,

it is apparent throughout the transcript that the council made every effort to conduct a fair and impartial hearing. In doing so they allowed, without comment, everyone who sought to address the council to do so, in some instances more than once. Following the hearing, the council members even spoke of the difficulties they had in balancing the competing interests before voting 4-1 in favor of the amendment. This appears to be consistent with notions of fair and impartial hearings.

The standard in judging the fairness of a public hearing was enunciated by us in *Golden Gate Corp.* v. *Town of Narragansett, supra* at 562, 359 A.2d at 326, where we said:

> "The crucial question to be answered is '* * * whether a fair-minded person in attendance at all of the meetings on a given issue, could, at the conclusion thereof, in good conscience say that everyone had been heard who, in all fairness, should have been heard and that the legislative body required by law to hold the hearings gave reasonable faith and credit to all matter presented, according to the weight and force they were in reason entitled to receive.'"

We find that the hearing conducted on the proposed zoning amendment was conducted in a manner which conforms to this standard and we see no evidence of the bias and prejudice of which petitioners complain.

### III.  The Comprehensive Plan

Finally, petitioners briefly allude to the queston of whether the amendments conform to a comprehensive plan in accordance with §1 of the enabling act. Any amendment which does not so conform to a comprehensive plan is illegal. *Sweetman* v. *Town of Cumberland, supra* at 144, 364 A.2d at 1285. "A court may strike down an amendment only if the amendment bears no reasonable relationship to the public health, safety or welfare." *Id.* at 145, 364 A.2d at 1285. "Furthermore, an amendment is presumed to be valid and the plaintiff must demonstrate

that no such reasonable relationship exists." *Id.* at 146, 364 A.2d at 1286.

The transcript of the hearing and the report by the North Kingstown Planning Commission leave no doubt that the amendment is consistent with the comprehensive zoning plan. The survey indicating the need for elderly housing in North Kingstown, the town master plan showing the area as planned for intensive residential development (three to twelve dwelling units per acre), and the study of the physical attributes of the area all indicate that this amendment conforms to the comprehensive plan. The petitioners point to various difficulties but come nowhere near meeting their burden of demonstrating a lack of reasonableness.

Since we find that the amendment to the Zoning Ordinance of North Kingstown is consistent with a comprehensive plan, and was passed by the town council after valid notice and hearing, we must reject the petitioners' claim.

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, and the records and papers certified to this court are ordered returned to the respondent town council with our decision endorsed thereon.

*A. Lauriston Parks,* for petitioners.

*Bernard F. McSally,* Town Solicitor, *Moore, Virgadamo, Boyle & Lynch, Ltd., Francis J. Boyle, Paul P. Pederzani, Jr.,* for State Street Development Company, amicus curiae, for respondents.