386 A.2d 1380.

## STATE *v.* DENNIS P. MCCONAGHY.

MAY 26, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

JOSLIN, J.   In February 1977, the defendant, Dennis P. McConaghy, was presented to a Superior Court justice as an alleged violator of the terms of probation imposed upon him in 1974 coincident with his receiving a suspended 5-year sentence. At the same time he was also presented as a violator of a 1974 deferred sentence. The grounds alleged for each violation were two charges of assault with intent to rob. After finding that the violations had been established, the trial justice further deferred sentencing on the deferred sentence, but removed the suspension and ordered the defendant committed on the sentence previously imposed. Soon thereafter the Attorney General announced that no information would

be filed on the charges upon which the violations were based. Thereupon, the defendant, relying on G.L. 1956 (1969 Reenactment) §12-19-18, as amended by P.L. 1974, ch. 118, §14[1] moved to vacate the execution of his 5-year suspended sentence. When that motion was denied on the ground that §12-19-18 applies only to a person sentenced for a violation of a deferred sentence agreement and not to a probation violator, the defendant appealed.

The defendant raises but a single issue. He does not deny that he committed the assaults or that the commission of those offenses violated the terms and conditions of his probation. Neither does he request that we re-examine our decision in *State* v. *Jones,* 116 R.I. 148, 352 A.2d 656 (1976), where we held that §12-19-18 applies only to deferred sentence violators. Rather, he contends that the scheme of §12-19-18 is violative of his rights under the equal protection clauses of the Federal and State Constitutions. The theory upon which he grounds this claim is that the challenged statute invidiously discriminates by providing that a failure of the Attorney General to file an information or of a grand jury to indict on the charge that allegedly constituted a violation entitles a deferred sentence violator, but not a probation violator, to have his sentence quashed and his imprisonment terminated.

The defendant does not categorize the classification in §12-19-18 as triggering the searching scrutiny that the Supreme Court accords laws that impinge upon fundamental

---

[1] General Laws 1956 (1969 Reenactment) §12-19-18, as amended by P.L. 1974, ch. 118, §14 provides:

"Whenever any person shall have been sentenced to imprisonment for violation of a deferred sentence by reason of the alleged commission of a felony and the grand jury shall have failed to return any indictment or an information has not been filed on the charge which was specifically alleged to have constituted the violation of said deferred sentence, the sentence to imprisonment for the alleged violation of the deferred sentence shall, on motion made to the court on behalf of the person so sentenced, be quashed and imprisonment thereunder shall be terminated forthwith and the deferred sentence shall have same force and effect as if no sentence to imprisonment had been imposed thereunder."

rights such as voting, *Harper* v. *Virginia State Board of Elections*, 383 U.S. 663, 86 S. Ct. 1079, 16 L. Ed. 2d 169 (1966); personal privacy, *Carey* v. *Population Services International*, 431 U.S. 678, 97 S. Ct. 2010, 52 L. Ed. 2d 675 (1977); legislative apportionment, *Reynolds* v. *Sims*, 377 U.S. 533, 84 S. Ct. 1362, 12 L. Ed. 2d 506 (1964); or access to the courts, *NAACP* v. *Button*, 371 U.S. 415, 83 S. Ct. 328, 9 L. Ed. 2d 405 (1963); or that create suspect classifications such as race, *Brown* v. *Board of Education*, 347 U.S. 483, 74 S. Ct. 686, 98 L. Ed. 873 (1954); or alienage, *Graham* v. *Richardson*, 403 U.S. 365, 91 S. Ct. 1848, 29 L. Ed. 2d 534 (1971).

Moreover, defendant agrees that the guarantee of equal protection does not require the Legislature to delineate with mathematical precision between deferred sentence and probation violators. Yet, he is unwilling, at least initially, to rest his case on the traditional standard of review which requires only that the classification be reasonable, not arbitrary, and that it be rationally related to a legitimate state purpose. *Village of Belle Terre* v. *Boraas*, 416 U.S. 1, 8, 94 S. Ct. 1536, 1540, 39 L. Ed. 2d 797, 803 (1974); *Jefferson* v. *Hackney*, 406 U.S. 535, 546, 92 S. Ct. 1724, 1731, 32 L. Ed. 2d 285, 296 (1972); *Carmichael* v. *Southern Coal & Coke Co.*, 301 U.S. 495, 510, 57 S. Ct. 868, 872-73, 81 L. Ed. 1245, 1253 (1937).

Instead, defendant contends that a statute like §12-19-18, which affects the duration of criminal incarceration, should be accorded some "middle legal" standard of review that is more demanding than minimum rationality but less exacting than strict scrutiny. While the Supreme Court may have applied such a standard of review to classifications based on illegitimacy or gender, *e.g.*, *Craig* v. *Boren*, 429 U.S. 190, 97 S. Ct. 451, 50 L. Ed. 2d 397 (1976); *Weber* v. *Aetna Casualty & Surety Co.*, 406 U.S. 164, 92 S. Ct. 1400, 31 L. Ed. 2d 768 (1972), and perhaps even in some cases involving indefinite involuntary commitment, *e.g.*, *Jackson* v. *Indiana*, 406 U.S. 715, 92 S. Ct. 1845, 32 L. Ed. 2d 435

(1972), that standard has not been applied in the context now before us; and the Supreme Court "has never adopted in a majority opinion the use of a standard of review other than the rational relationship or strict scrutiny-compelling interest standards." Nowak, Rotunda & Young, *Constitutional Law* 526, (1978). *See Developments in the Law — Equal Protection* , 82 Harv. L. Rev. 1065, 1076-1133 (1969). That view is binding on our consideration of defendant's claim that his rights under the Federal Constitution have been violated. *Oregon* v. *Hass,* 420 U.S 714, 719, 95 S. Ct. 1215, 1219, 43 L. Ed. 2d 570, 575-76 (1975). *Cf. Oregon* v. *Mathiason,* 429 U.S. 492, 97 S. Ct. 711, 50 L. Ed. 2d 714 (1977), and we are not convinced that we should conclude otherwise with respect to our own state constitution. *See Berberian* v. *Petit,* 118 R.I. 448, 374 A.2d 791 (1977); *Sweetman* v. *Town of Cumberland,* 117 R.I. 134, 364 A.2d 1277 (1976); *J.M. Mills, Inc.* v. *Murphy,* 116 R.I. 54, 352 A.2d 661 (1976); *Hospital Service Corp.* v. *West,* 112 R.I. 164, 308 A.2d 489 (1973).

Accordingly, in deciding the constitutional propriety of the manner in which the Legislature has distinguished between deferred sentence and probation violations, we "inquire only whether the challenged distinction rationally furthers some legitimate, articulated state purpose," *McGinnis* v. *Royster,* 410 U.S. 263, 270, 93 S. Ct. 1055, 1059, 35 L. Ed. 2d 282, 289 (1973), or whether it has "some relevance to the purposes for which the classification is made." *Baxstrom* v. *Herold,* 383 U.S. 107, 111, 86 S. Ct. 760, 763, 15 L. Ed. 2d 620, 624 (1966).

Perhaps anticipating our rejection of his "middle view," defendant has argued alternatively that disparate treatment of those who violate probation and those who violate deferred sentence agreements does not even satisfy the rational basis test. It falls short, he asserts, because to grant the benefits provided for in §12-19-18 to deferred sentence violators and to deny them to those in the similarly situated group of probation violators is arbitrary and capricious and bears no relationship to an underlying state purpose.

We reject that contention. We, of course, are aware that the deferred sentence and the suspended sentence-probation systems possess many common characteristics, chief among them being the same enlightened legislative policy that, on the one hand, provides a criminal defendant with an opportunity for rehabilitation and, on the other, protects society from the criminal defendant who has been adjudicated a violator and has thereby demonstrated his failure to take advantage of that opportunity.

Notwithstanding the commonality of the two systems, however, they are not the same. *State* v. *Robalewski*, 96 R.I. 296, 300, 191 A.2d 148, 151 (1963). Thus, the court's power to defer sentence derives from §12-19-19,[2] which provides that sentencing may be deferred on a plea of guilty or nolo contendere subject to a defendant's compliance with the conditions fixed in an agreement with the Attorney General. In contrast, a suspended sentence is governed by §12-19-8, as amended by P.L. 1974, ch. 224, §1.[3] That section permits a

---

[2]General Laws 1956 (1969 Reenactment §12-19-19 provides as follows:

"Whenever any prisoner shall be arraigned before the superior court, and shall plead guilty, or refuse to contend with the state, he may be at any time sentenced by the court; provided, that if at any time the court formally defers sentencing the defendant, and thereupon a written agreement concerning said deferring of sentence is entered into between the attorney-general and the prisoner, and .filed with the clerk of said court, thereafter the court may only impose sentence within five (5) years from and after the date of said written agreement, unless during said period, such prisoner shall be sentenced to imprisonment in this or in any other state, in which event the court may impose sentence at any time within five (5) years from and after the termination of such sentence of imprisonment, or unless at the time such sentence is formally deferred such prisoner shall be serving a term of imprisonment under sentence previously imposed in another case, in which event the court may impose sentence at any time within five (5) years from and after the date on which such prisoner is released from prison either on parole or at the termination of such sentence of imprisonment, whichever first occurs."

[3]General Laws 1956 (1969 Reenactment) §12-19-8, as amended by P.L. 1974, ch. 224, §1 provides:

"Except where the suspension of sentence shall otherwise be prohibited by law, whenever any defendant shall appear for sentence before the superior or district court, the court may impose a sentence and suspend the execution

trial justice to impose sentence upon a plea or a finding of guilt and to place the defendant upon probation, but to suspend execution of the sentence in whole or in part subject to the defendant's compliance with the terms and conditions of his probation. One significant distinction between the two, then, is that when sentencing is deferred, sentence is not imposed until there is a violation; whereas when it is suspended, sentence is imposed directly after the defendant pleads or is found guilty. *State* v. *Robalewski*, 96 R.I. at 300, 191 A.2d at 151.

This difference in the time and manner of imposition of sentence creates a very real possibility that two defendants, one of whom received a suspended sentence and was placed on probation for the same offense for which the other received a deferred sentence, will receive substantially different treatment if they are subsequently violated upon identical charges. In that situation, the only risk run by the probationer is that his suspension will be removed and he will be committed on the sentence previously imposed or on a lesser sentence. The risk faced by the deferred sentence violator is substantially different. His adjudication as a violater makes it possible for sentence to be imposed for the offense upon which sentence was originally deferred. Notwithstanding our holding in *State* v. *Fortes*, 114 R.I. 161, 174, 330 A.2d 404, 412 (1975), that the offense upon which a violation is predicated "should play no part in determining the extent of the penalty to be imposed on the charge on which sentence had formerly been deferred," we would be closing our eyes to

thereof, in whole or in part, or place the defendant on probation without the imposition of a suspended sentence. The suspension shall place the defendant on probation for such time and on such terms and conditions as the court may fix.

"The period of probation, where no sentence is imposed or where sentence is entirely suspended, may be for any period up to the maximum time of sentence provided by applicable statutes. Where sentence is imposed and suspended in part, the term ordered to be served and the period of probation together shall not exceed the maximum time of sentence provided by applicable statutes."

reality if we did not recognize that the violating offense will sometimes play an unintended role in the fixing of that sentence. Consequently, the deferred sentence violator well might receive a more severe sentence than did his counterpart, the severity of whose suspended sentence was determined solely by the character of the original offense.

The Legislature was undoubtedly aware of this differing risk and in our judgment it intended to compensate for this difference by providing in §12-19-18 that the failure to file an information or to indict for the charge upon which a violation is predicated entitles the imprisoned deferred sentence violator to have his sentence quashed and his imprisonment terminated. In so doing it acted rationally and the treatment accorded deferred sentence and probation violators serves a legitimate purpose. An extension of the benefits of §12-19-18 to probation violators must come from the Legislature. It is not available from the courts.

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court.

*Julius C. Michaelson,* Attorney General, *E. Martin Stutchfield,* Special Assistant Attorney General, for plaintiff.

*William F. Reilly,* Public Defender, *Barbara Hurst,* Chief Appellate Attorney, for defendant.