**TOWN OF EAST GREENWICH**

v.

**NARRAGANSETT ELECTRIC COMPANY.**

No. 93–589–M.P.

Supreme Court of Rhode Island.

Dec. 19, 1994.

Edmund L. Alves, Jr., Gorham & Gorham, Providence, for plaintiff.

Andrew B. Prescott, Peter V. Lacourture, Tillinghast, Collins & Graham, Providence, Adrienne Southgate and Ronald Gerwatowski, Public Utilities Com'n, for defendant.

## OPINION

MURRAY, Justice.

This case came before us on the petition of the town of East Greenwich (the town) for writ of certiorari. The town requests this court quash an order of the Public Utilities Commission (the PUC) and deny and dismiss the Narragansett Electric Company's (Narragansett) initial petition to the PUC. To the extent noted below, we decline to do so.

Concerned about the possible harmful effects of the electromagnetic field (EMF) that emanates from high-voltage power lines, the East Greenwich Town Council unanimously approved five amendments to its comprehensive plan on July 13, 1993. *See* Appendix. A town or a city's comprehensive plan is a "statement (in text, maps, illustrations, or other media of communication) that is designed to provide a basis for rational decision making regarding the long term physical development of the municipality." G.L.1956 (1991 Reenactment) § 45–22.2–6. Pursuant to the Comprehensive Planning and Land Use Act, all towns and cities are required to adopt, update, and amend a comprehensive plan, including implementation programs, in conformity with the provisions set forth in the act. G.L.1956 (1991 Reenactment) chapter 22.2 of title 45.

Seeking to invalidate these amendments, Narragansett filed a petition with the PUC on July 22, 1993. *See* G.L.1956 (1990 Reenactment) § 39–1–30. On October 27, 1993, the PUC issued a written report and order without the benefit of a hearing. After stating that it had jurisdiction to entertain Narragansett's petition under § 39–1–30, the PUC rejected four of the five amendments, reasoning that they "interfere[ ] with Narragansett's rights to construct and operate transmission facilities and other utility facilities in East Greenwich" and were therefore violative of this court's decision in *Town of East Greenwich v. O'Neil,* 617 A.2d 104 (R.I. 1992). The town's addition to § 2.3.2 of its comprehensive plan was the only amendment not invalidated by the PUC. *See* Appendix. As a result of the order, the town filed a timely petition for writ of certiorari which we granted on November 3, 1993. The town now contends that the PUC was clearly wrong in issuing its order because the PUC was without jurisdiction to consider Narragansett's petition, the petition was premature, and the amendments are consistent with the state regulatory scheme governing public utilities.

■ The town initially contends that the PUC lacked the statutory jurisdiction to render an order pertaining to the amendments. The relevant jurisdictional authority of the PUC is set forth in § 39–1–30, which states in part:

"Every ordinance enacted, or regulation promulgated by any town or city affecting the mode or manner of operation or the placing or maintenance of the plant and equipment of any company under the supervision of the commission, shall be subject to the right of appeal by any aggrieved party to the commission within ten (10) days from the enactment or promulgation."

The town avers that the amendments to its comprehensive plan are neither ordinances nor regulations and have no impact on Narragansett's ability to operate and construct transmission lines throughout East Greenwich. Instead, the town asserts that the comprehensive plan is simply a long-range statement of planning goals which is not self-executing in nature, but requires some further public action to implement it, such as zoning or other regulatory ordinances. Therefore, they reason that unless and until the town takes such action, the PUC was without authority to render an order pursuant to § 39–1–30.

In order to determine whether the PUC has jurisdiction under § 39–1–30, this court, like the PUC, must evaluate whether the enactments in question "affect the mode or manner of operation or the placing or maintenance of the plant and equipment of any company" under the PUC's supervision. We are of the opinion that the amendments to the town's comprehensive plan have such an effect. We believe a comprehensive plan is not simply the innocuous general-policy statement the town contends it is. Instead, the comprehensive plan, comprised of "text, maps, illustrations, or other media of communication," establishes a binding framework or blueprint that dictates town and city promulgation of conforming zoning and planning ordinances. *See* G.L.1956 (1991 Reenactment) § 45–24–29(b)(2).

Under § 45–24–29(b)(2) the General Assembly has clearly instructed the state zoning enabling authority to require *"each city and town to conform its zoning ordinance and zoning map to be consistent with its comprehensive plan * * *."* (Emphasis add-

ed.) As a consequence, the town is legally compelled to enact or to amend its zoning ordinance in conformity with these amendments. *Id.; see also* § 45–24–34 ("[a] zoning ordinance * * * shall include a statement of consistency with the comprehensive plan"). Therefore, the town is required to enact a zoning ordinance which directs the construction of new power lines be accomplished in such a way as to "reduce EMF's to the lowest possible level." *See* amendments to §§ 2.3.4 and 6.1.1 and amendment 7.10. Specifically, the zoning ordinance could require that construction of new power lines be underground and away from "sensitive receptors such as residences, businesses, schools," and so forth. *See* amendment 4.1.11.

The town counters by relying on an older line of cases for the proposition that a municipality's master plan does not control its zoning and that a zoning ordinance need not conform to the master plan. *See Mesolella v. City of Providence,* 439 A.2d 1370 (R.I.1982); *Sweetman v. Town of Cumberland,* 117 R.I. 134, 364 A.2d 1277 (1976). The General Assembly, however, has since repealed G.L. 1956 (1970 Reenactment) § 45–24–3, the enabling act both *Sweetman* and *Mesolella* were interpreting. *See* § 45–24–3, repealed as of July 1, 1993 by P.L.1991, ch. 307, § 1. As we noted earlier, the Legislature has also recently enacted § 45–24–29(b)(2), specifically directing the state zoning enabling authority to require "each city and town to conform its zoning ordinance and zoning map to be consistent with its comprehensive plan" developed under the Comprehensive Planning and Land Use Regulation Act. This section was not in effect at the time of *Sweetman* and *Mesolella.* Furthermore, the cases relied upon by the town were decided long before the General Assembly enacted the Comprehensive Planning and Land Use Regulation Act which substantially rewrote and extended existing state law governing town and city land use regulation. *See* chapter 22.2 of title 45. Therefore, to the extent that *Sweetman* and *Mesolella* rely on § 45–24–3, they are no longer sound authority.

With the foregoing in mind, we are of the opinion that the town's amendments clearly "affect the mode or manner of operation or

the placing or maintenance of the plant and equipment" by Narragansett because they require the town to adopt enactments which would interfere with Narragansett's siting of power lines. As a consequence, we are persuaded that the amendments were sufficient to give the PUC jurisdiction under § 39–1–30 to entertain Narragansett's petition.

■ The town next contends that Narragansett's petition to the PUC was brought prematurely. It argues that a series of steps must be taken before the amendments become effective: the comprehensive plan must be submitted to the director of administration, who must give public notice of his or her impending review of the plan, § 45–22.2–9(C), as amended by P.L.1992, ch. 385, § 3; the plan must ultimately be approved by the director whose decision may be appealed to the comprehensive-plan appeals board, § 45–22.2–9(C)(7); in turn, the board's determination may be appealed to this court. *Id.* Therefore, the town reasons that the PUC erred when it prematurely invalidated the amendments prior to the director's review.

Pursuant to § 39–1–30 an aggrieved utility may file a petition with the PUC to challenge any enactment that affects the "mode or manner of operation or the maintenance of the plant and equipment of any company" under the PUC's supervision within ten days from its passage. Outside this ten-day statutory period, the utility has waived its right to contest the enactment to the PUC. In the present case, the town enacted its amendments on July 13, 1993. Nine days later, on July 22, 1993, Narragansett filed its petition to the PUC.

As we noted previously, the PUC had jurisdiction as soon as these amendments were enacted. Shortly thereafter, the comprehensive-plan approval process was required to commence. However, we believe there is no compelling reason why the comprehensive-plan approval process and the PUC's review should be prevented from proceeding concurrently as in the instant case. The PUC's jurisdiction, with respect to a town or a city's comprehensive plan and amendments thereto, encompasses only the provisions of the plan that "affect[ ] the mode or manner of operation or the placing or maintenance of

the plant and equipment" of any utility under the PUC's supervision. Section 39–1–30. On the other hand, the comprehensive-plan approval process includes review of everything that is placed into the comprehensive plan and its amendments. When the jurisdiction of the approval process and the PUC overlap and produce inapposite results, the PUC prevails because the General Assembly has invested it with "the exclusive power and authority to supervise, regulate, and make orders governing the conduct of public utilities." *Town of East Greenwich v. O'Neil*, 617 A.2d at 110 (in part quoting § 39–1–1). We are therefore of the opinion that Narragansett's petition was not premature.

█ In the last issue under review, the town contends that even if the PUC had jurisdiction to entertain Narragansett's petition and even if the petition was not premature, the town's amendments were consistent with the state regulatory scheme governing high-voltage power lines. Therefore, the town reasons that the amendments were not preempted.

█ As we previously noted, the PUC "has 'the exclusive power and authority to supervise, regulate and make orders governing the conduct' of public utilities." 617 A.2d at 110 (quoting *In re Woonsocket Water Department*, 538 A.2d 1011, 1014 (R.I.1988) and § 39–1–1). By granting this authority to the PUC, the General Assembly has expressed its intent to entirely preempt town and city regulatory activity in the "field of public-utilities regulation." 617 A.2d at 110. This regulatory activity need not be disruptive or otherwise inconsistent with the state's regulatory scheme. *Id.* Instead, as long as a town or a city's enactment invades the expressly reserved "field of public-utilities regulation," the enactment is preempted. *Id.; see also* The Energy Facility Siting Act, G.L. 1956 (1993 Reenactment) chapter 98 of title 42, bringing high-voltage power lines within the state's jurisdiction.

In the instant case, the town's amendments specifically deal with the siting and the construction of electric power lines and power-generating facilities. The amendments provide that power lines should be constructed in an effort to reduce EMF ex-

posure to the lowest possible levels and should be constructed underground and away from sensitive receptor sites, such as homes, businesses, and schools. *See* amendments to §§ 2.3.2, 2.3.4 and § 4.1.11. Additionally the amendments state that future utility substations should be designed and new power facilities should have as an objective the reduction of the public's exposure to EMF's. *See* amendment § 6.1.1. The amendments also require the town to adopt a policy to regulate the siting of high-voltage transmission lines to reduce EMF exposure to the lowest level possible. *See* amendment to § 7.10.

█ We are of the opinion that these amendments, with the exceptions noted below, invade the field of public utilities regulation, which the General Assembly has expressly preempted from town and city intrusion. Therefore, we hold that the PUC properly invalidated these amendments. However, we are persuaded that the provisions in amendment § 6.1.1 setting forth the town's intentions to establish a program of energy conservation, to investigate technologies and equipment to reduce EMF exposure, and to encourage public awareness of EMF exposure, do not invade the field of public utilities regulation and as such are not preempted.

For the forgoing reasons the petition for certiorari is granted in part and denied in part. The order of the PUC is quashed in part and affirmed in part. The papers in this case may be remanded to the commission with our decision endorsed thereon.

*APPENDIX*

*AMENDMENTS TO 1992 EAST GREENWICH COMPREHENSIVE PLAN*

*PRC*

CHAPTER II   COMMUNITY OBJECTIVES

Section 2.3.2 Development Patterns

Add In recognition of the harmful health and environmental effects related to exposure to electromagnetic field's (EMF's), future construction of new high voltage power lines in easements and rights-of-

ways should be carefully regulated. The Town will do everything possible to insure such scrutiny and regulation by actively participating in the review process governed by the R.I. Energy Facilities Act (RIGL 42–98–1).

Section 2.3.4 Community Facilities Services

Add Where rights-of-ways for utility corridors are of insufficient width to eliminate EMF exposure from new power lines located close to potential or existing developments such that there are risks of public exposure to electromagnetic fields (EMF's) with significant field strength levels, transmission lines shall be constructed to reduce EMF's to the lowest possible level obtainable by existing technology.

## CHAPTER IV EXISTING CONDITIONS

Section 4.1 Community Facilities and Services

Add 4.1.11 High Voltage Transmission Lines Given that there is a growing public concern about the effects of prolonged exposure to electromagnetic fields (EMF's), the Town of East Greenwich should take steps toward eliminating this exposure to its residents.

Such steps may include but not be limited to underground utilities, siting utility rights-of-way away from sensitive receptors such as residences, businesses, schools, day care facilities, nursing homes, hospitals and recreational facilities, monitoring of data regarding the effects of EMF's and participating in the State regulatory process under the R.I. Energy Facilities Act (RIGL 42–98–1).

## CHAPTER VI PLAN ELEMENTS

Section 6.1.1 Major Issues and Recommendations (for Community Facilities and Services)

The Town should adopt an approach of "prudent Avoidance" to regulate the siting of high voltage transmission lines in the Town. As defined by the Town, the

prudent avoidance doctrine stated that so long as the level of risk due to electromagnetic field exposure is unknown, it is best to reduce EMF's to the lowest possible level by existing technology. In addition to adopting this approach, the Town should adhere to the following policies:

★ The Town should establish a program of energy conservation in municipal facilities.

★ The Town should investigate technologies and equipment to reduce EMF exposure of its employees to the lowest possible levels.

★ Public awareness of EMF exposure should be encouraged through ongoing public educational programs.

★ New power facilities should have an objective of reducing EMF exposure from such new power facilities to the lowest possible level obtainable by existing technology.

★ Future substations should be designed to reduce the public's exposure to EMF's to the lowest possible level obtainable by existing technology.

## CHAPTER VIII PLAN IMPLEMENTATION

Section 7.10 Zoning Changes

Add g. Adopt a policy to regulate the siting of high voltage transmission lines so as to reduce the risk of electromagnetic field exposure to the lowest possible level obtainable by existing technology.