[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Plaintiffs, owners of property in and residents of the City of Woonsocket, appeal the passage of Woonsocket Ordinance No. 04-O-2, an amendment to Woonsocket's zoning ordinance, contending that it is inconsistent with the City's comprehensive plan and therefore invalid. Defendants, the City of Woonsocket, the Woonsocket City Council, and members of the City Council, deny that the amendment is invalid, and assert that it is consistent with the comprehensive plan in that it is reasonably related to public health, safety, and welfare. At issue in this case is the standard of review to be applied by the Superior Court in reviewing amendments to local zoning ordinances.
 FACTS AND TRAVEL
The property that is the subject of the present controversy is identified as Woonsocket Assessor's Plat 53 Lots 50 and 30 and a portion of Assessor's Plat 57 Lot 88. The parcel comprises approximately 24 acres of undeveloped land that was dedicated to the City of Woonsocket in 1965. The parcel contains a retention pond, built by the former owner of the property to fulfill a condition on the construction of a housing development on adjacent land; otherwise, the property is unimproved. Since its dedication, the property has been maintained and zoned as open space. It is presently zoned PR-2, defined by the Woonsocket Zoning Ordinance as "Passive Public Recreation District, for the conservation and protection of the natural state of designated areas to provide opportunities for walking, hiking, observation and other passive recreational activities, and to provide a category of land held in perpetuity to insure that the present and future residents of the City shall enjoy the benefits of the natural environment. No minimum lot size is required." Woonsocket, R.I. Rev. Ordinances app. C, § 2.1-5.2 (2002). The property is bordered on three sides by residential areas and on one side by a commercial district.
In late 2003, the City of Woonsocket solicited buyers for six acres of the subject property. The City received two bids and at a December 15, 2003 public hearing accepted a bid from Wal-Mart Stores, Inc. Wal-Mart desired to purchase the property in order to expand its existing store located on adjacent property. The City and Wal-Mart entered into a purchase and sale agreement that made the sale of the property contingent on the City Council passing an amendment to the City's zoning ordinance to change the zoning of the subject property from PR-2 to C-2, defined as "Major Commercial District, primarily for the conduct of major retail trade and services to the general public. A minimum of six thousand (6,000) square feet is required per lot." Woonsocket, R.I. Rev. Ordinances app. C, § 2.1-2.2 (2002). The amendment would change the zoning of the parcel from the least intense designation to the most intense commercial district, the third highest intensity provided for by the Zoning Ordinance. Woonsocket, R.I. Rev. Ordinances app. C, § 2.4 (2002).[1] Wal-Mart's bid was accepted contingent on its agreeing to make improvements to the retention pond on the subject property.
A public hearing was held by the Planning Board for the City of Woonsocket on February 3, 2004, and another by the City Council on March 1, 2004. Expert testimony was presented at these hearings, and neighbors objecting to the proposed amendment were given an opportunity to be heard. On March 15, 2004 at a regular meeting of the City Council, upon the motions of several members, various conditions were imposed upon Wal-Mart's use and development of the property and were incorporated into the amendment.[2] The amendment, together with its use and development conditions, was then unanimously approved. In accordance with Woonsocket City Charter ch. III § 5, the amendment was again approved at the next regular meeting on April 5, 2004 and was signed and approved by Woonsocket Mayor Susan D. Menard the following day.
The amendment provides, in pertinent part:
 WHEREAS, The Woonsocket Council is currently considering under separate legislation the sale of a 6.0± acre parcel of city-owned land comprised of a portion of Lots 5 30, Tax Assessor's Plat 53, and a portion of Lot 88, Tax Assessor's Plat 57, to Wal-Mart Stores, Inc.; and,
 WHEREAS, rezoning of this parcel from a PR-2 Passive Public Recreation District to a C-2 Major Commercial District is a condition of the sale and would be consistent with the existing zoning of adjacent parcels on Diamond Hill Rd.
 IT IS ORDAINED BY THE CITY COUNCIL OF THE CITY OFWOONSOCKET, RHODE ISLAND, AS FOLLOWS: SECTION 1. The Code of Ordinances of the City of Woonsocket, Appendix C, entitled "zoning", is hereby amended by changing the zoning designation of a portion of Assessor's Plat 42, Lots 5 30, and a portion of assessor's Plat 57, Lot 88, from a PR-2 Passive Public Recreation District to a C-2 Major Commercial District as depicted on the attached Exhibit "A". City of Woonsocket, Rhode Island Ordinance 04-O-2. . . .
The use and development conditions incorporated into the amendment provide:
 • "Prior to the commencement of construction, pre-blasting surveys will be done on neighboring residential properties per the standards of the State of Rhode Island and the City's Public Works Department. A bond shall be posted that will be available to pay any claims made by area residents, if there is damage to private property.
 • The rezoning is subject to the submission and approval of a subdivision plan that will combine the city-owned, 6-acre parcel herein being rezoned with the adjacent land (Plat 52, Lot6) currently owned by Wal-Mart. The rezoning of this parcel will not become effective until the subdivision is approved and recorded.
 • Vehicular access to the Wal-Mart property including the 6-acre, city-owned parcel to be rezoned shall be limited to Diamond Hill Road. No emergency or secondary access will be permitted onto the streets in the Walnut Hills Residential Subdivision.
 • No loading and unloading or idling of delivery trucks shall occur between the hours of 10:00 PM and 6:00 AM. This prohibition shall also include the loading and unloading of containers containing merchandise.
 • The operation of trash compactors and the removal of trash shall be prohibited between the hours of 10:00 PM and 6:00 AM. Trash containers shall be fully covered and enclosed at the rear of the property.
 • The rezoning is subject to the preparation of drawings and specifications to the satisfaction of the Director of Public Works for the enlargement and redesign of the holding pond off Knollwood Drive and other required storm water modifications that will alleviate existing flooding in the area. All required storm water improvements are to be performed by Wal-Mart at no cost to the City. The storm water improvements are to be completed to the satisfaction of the Director of Public Works prior to the issuance of a Certificate of Occupancy of the proposed building addition.
 • Design details concerning the proposed retaining walls, landscaping, outside lighting and specific design details of the enlarged holding pond shall be recognized and addressed in the preparation of final plans to be submitted and approved by the City's Design Review Commission.
 • The use of pavement sweepers or other powered equipment within the parking lots, loading areas, and other exterior locations shall be prohibited between the hours of 10:00 PM and 6:00 AM." Id.
Thus, the City Council not only amended the zoning ordinance but it imposed particular conditions on the use and development of the six acre parcel that was rezoned as well as upon an adjoining property, albeit owned by the same entity that was proposing to buy the parcel at issue.
Plaintiffs filed an appeal to the Superior Court on May 5, 2004 and, thereafter, both parties filed memorandum of law on the question of whether or not the Amendment is inconsistent with the City's Comprehensive Plan. As an initial matter, both Plaintiffs and defendants rely upon the plain language of the Amendment and neither has requested an evidentiary hearing on this question.[3]
 THE APPLICABLE STANDARD OF REVIEW
The initial question raised by the parties is what standard of review is required by the Zoning Enabling Act of 1991, G.L. 1956 §§ 45-24-27
through 45-24-72, ("Zoning Enabling Act" or "Act"). The plaintiffs point to the plain language of the Act which directs that "The review shall be conducted by the court without a jury. The court shall first consider whether the enactment or amendment of the zoning ordinance is in conformity with the comprehensive plan. If the enactment or amendment is not in conformity with the comprehensive plan, then the court shall invalidate the enactment of amendment, or those parts of [it] which are not in conformance with the comprehensive plan." Section 45-24-71. The plaintiffs next point to the plain language of the City's Comprehensive Plan and that of Ordinance 04-O-2. They contend that Ordinance 04-O-2 is invalid because it is, on its face, inconsistent with the City's Comprehensive Plan.
The defendants concede that amendments to the a municipality's zoning ordinance must be consistent with the municipality's comprehensive plan but they contend, however, that because the action of the City Council in amending the zoning ordinance is a legislative act, the amendment is presumptively valid, and should not be subject to judicial review unless the city's entire comprehensive plan was violated. Relying on case law interpreting the provisions of former Chapter 24 of Title 45 of the General Laws governing zoning ordinances, now repealed by the Zoning Enabling Act, the defendants claim that "the plaintiffs have an exceptionally high burden to reach via competent evidence" in challenging the amendment. They argue that "`only if the amendment bears no reasonable relationship to public health, safety, or welfare,'" may the Court find it invalid. In support of this position, the defendants assert that it would be absurd to interpret the Zoning Enabling Act to allow the Superior Court greater power to review a zoning amendment than it has to review the decision of a zoning board regarding, for instance, to allow a hotel to convert to a resort and spa.[4]
Thus, the parties dispute whether the enactment of the Zoning Enabling Act of 1991 altered the standard that this Court must apply in reviewing a zoning ordinance or amendment.
"`It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings. Moreover, when we examine an unambiguous statute, `there is no room for statutory construction and we must apply the statute as written.'" JeffAnthony Props. v. Zoning Bd. of Review, 853 A.2d 1226, 1230 (R.I. 2004) (internal citations omitted) (quoting Keystone Elevator Co., Inc. v.Johnson Wales Univ., 850 A.2d 912 (R.I. 2004); State v. DiCicco,707 A.2d 251, 253 (R.I. 1998)). Given that the language of the Zoning Enabling Act is apparent and unambiguous, the Court's task is equally as apparent. The Court must undertake a review of the municipality's comprehensive plan and compare it to the ordinance or amendment to see if the ordinance or amendment is conforms to the provisions, goals and policies of the comprehensive plan. If it is not, the Court must invalidate the ordinance or amendment as directed to do so by the legislature.
Even if the language of the Zoning Enabling Act were not plain enough, a comparison of the past and present statutory schemes governing land use underscores the legislative intent behind the Zoning Enabling Act. Pursuant to the Comprehensive Planning and Land Use Act, §§ 45-22.2-1
through 45-22.2-14, enacted in 1988, all towns and cities are required to create and adopt a comprehensive plan. Section 45-24-2; Town of E.Greenwich v. Narragansett Elec. Co., 651 A.2d 725, 727 (R.I. 1994). A comprehensive plan is a "statement (in text, maps, illustrations, or other media of communication) that is designed to provide a basis for rational decision making regarding the long term physical development of the municipality." Section 45-22.2-6. It must be "internally consistent in its policies, forecasts, and standards," lay out goals and policies for growth, contain a land use plan map, identify and analyze existing and future housing needs, identify economic development policies and strategies, provide an inventory of natural resources and open space and formulate policies for their protection, and analyze traffic circulation. Id. Since the effective date of the Zoning Enabling Act, all local zoning ordinances adopted or amended and all land use decisions have been required to be "in conformance" or "consistent" with municipality's comprehensive plan. See §§ 45-22.2-13, 45-24-39(b)(2),45-24-34.
Prior to the effective dates of the 1991 Act, zoning was regulated pursuant to statutes enacted in the 1920's. See G.L. 1956 Chapters 22 through 24 of Title 45 (repealed effective 1994). Section 45-24-1
(repealed) granted cities and towns the power to enact zoning ordinances for the purpose of promoting the public health, safety, morals, or general welfare. The ordinances were to be "made in accordance with a comprehensive plan," although the term "comprehensive plan" was left undefined. Section 45-24-3 (repealed). There was no requirement that a municipality create a comprehensive plan, or guidance as to what it such a plan should consist of if it did.
In construing the requirement that the ordinances be made in accordance with a comprehensive plan, the Rhode Island Supreme Court held that the purpose was to "`avoid an arbitrary, unreasonable or capricious exercise of the zoning power, resulting in haphazard or piecemeal zoning.'"Cianciarulo v. Tarro, 92 R.I. 352, 359, 168 A.2d 719, 723 (1961). A few years later the Supreme Court explained what was meant by a "comprehensive plan," holding that
 "the Legislature intended to use [the phrase] in the context of the zoning power which is valid only as an exercise of the police power of the state. In such context a `comprehensive plan' must of necessity be a scheme or formula of zoning that reasonably relates the regulation and restriction of land uses and the establishment of districts therefor to the health, safety, and welfare of the public and thus to the police power." Mesolella v. Providence, 439 A.2d 1370, 1374 (R.I. 1982) (quoting Hadley v. Harold Realty Co., 97 R.I. 403, 408, 198 A.2d 149, 152 (1964)).
A "comprehensive plan" of zoning simply meant that zoning was carried out in a systematic manner. SeeCianciarulo, 92 R.I. at 356-58, 168 A.2d at 721-23. As long as a zoning amendment was "reasonably relate[d] to the public health, safety, or welfare, then the comprehensive plan remain[ed] intact and the amendment [wa]s valid." Mesolella, 439 A.2d at 1374 (citing Willeyv. Town Council of Barrington, 106 R.I. 544, 559,261 A.2d 627, 635 (1970); Hadley, 97 R.I. at 409,198 A.2d at 152).
With the 1991 enactment of a completely new statutory scheme governing land use, the General Assembly expressly required the creation of comprehensive plans and provided explicit instructions as to what they must consist of. A comprehensive plan is no longer an amorphous guide that only requires that zoning ordinances be based on a scheme or plan that reasonably relates to a valid exercise of the State's police power. Indeed, our Supreme Court has held that a comprehensive plan is not to be treated as an "innocuous general-policy statement," but a "binding framework or blueprint that dictates town and city promulgation of conforming zoning and planning ordinances." Town of E.Greenwich, 651 A.2d at 727. In Town of East Greenwich,
the Supreme Court held that where a town had amended its comprehensive plan to reflect concerns about electromagnetic fields from high voltage power lines, it was "legally compelled to enact or to amend its zoning ordinance in conformity with the amendments," to effect the goals of the amendments. Id. at 728. Moreover, it held that to the extent that older cases relied on the repealed sections of Chapter 24 of the General Laws, they are no longer sound authority. Id. at 728 (referring to Sweetman v. Town of Cumberland, 117 R.I. 134,364 A.2d 1277 (1976) and Mesolella, 439 A.2d 1370).
It follows from the Supreme Court's analysis in Townof East Greenwich that this older line of cases, the same upon which the defendants rely, cannot be sound authority here. If the Zoning Enabling Act of 1991 requires a town to affirmatively enact new ordinances to bring it into conformity with a specific provision of its comprehensive plan, then conversely, it must require invalidation of an amendment that is inconsistent with or contradictory to the specific provisions, goals and policies of the comprehensive plan. A reasonable relation to the police power is simply no longer sufficient.
Thus, although an amendment to a zoning ordinance is a quasi-legislative act and subject to a presumption of validity, See Ruby Assoc., Inc. v. Ferranti, 603 A.2d 331,333 (R.I. 1992) ("actions taken by a city or town council pursuant to § 45-24-5 are considered purely legislative in character . . . and thus enjoy an initial presumption of validity"), the "exceptionally high" burden urged by the defendants no longer applies to challenges to a zoning ordinance amendment. In rebutting the presumption of validity, a plaintiff is no longer required to show that the amendment is not reasonably related to the state's police power burden but, instead, is required only to show that the challenged ordinance or amendment is contradictory to the comprehensive plan. See Lake City Corp. v. City ofMequon, 558 N.W.2d 100, 164 (Wis. 1997) (holding that the plain meaning of the word consistent was "in agreement; compatible," and "not contradictory," quotingThe American Heritage Dictionary 402 (3d ed. 1992)). This conclusion comports with the General Assembly's finding that "[i]t is necessary to take full account of the requirement that each city and town amend its zoning ordinance to conform to and be consistent with its comprehensive plan adopted pursuant to chapter 22.2 of this title, and to all the elements contained therein."
 CONSISTENCY WITH THE COMPREHENSIVE PLAN
The plaintiffs argue that Ordinance 04-O-2 is inconsistent with the present and proposed future use of the subject property, as set forth in the Comprehensive Plan and note that the subject property is not listed in the Comprehensive Plan as needing to be rezoned in order to be consistent with the Plan. They contend, therefore, that a drastic change in the property's zoning would be inconsistent with the Comprehensive Plan. The plaintiffs also assert that, in addition to being inconsistent with specific provisions of the Comprehensive Plan, the amendment is inconsistent with the City's planning goals and policies as stated in the Plan. Specifically, the plaintiffs argue that the ordinance is inconsistent with the Land Use and the Open Space and Recreation Elements of the Comprehensive Plan.
Applying the standard of review they advocate, the defendants argue that the amendment is consistent with the provisions of Woonsocket's zoning ordinance and with the goals and policies stated in the Open Space and Recreation, Land Use, and Economic Development Elements of the City's Comprehensive Plan because it is reasonably related to public health, safety and welfare.
 Ordinance 04-O-2 is Inconsistent with SpecificProvisions of the Comprehensive Plan
As a "blueprint" for land use, a municipality's Comprehensive Plan dictates not only how land is currently being used, but how it should be used in the future. See § 45-22.2-5(a)(1). Woonsocket's Comprehensive Plan includes a map entitled "Proposed Non Residential Districts," delineating, in part, what land is to be left undeveloped in the future.[5] See City of Woonsocket, Rhode Island, 6 (2002) [hereinafter Comp. Pl.]. The six acres subject to rezoning pursuant to Ordinance 04-O-2 are designated Public Recreation — Passive (PR-2), a category of land that, by the terms of the zoning ordinance, is to be "held in perpetuity to insure that the present and future residents of the City shall enjoy the benefits of the natural environment." Woonsocket, R.I. Rev. Ordinances app. C, § 2.1-5.2 (2002). In addition, the Comprehensive Plan does not list amending the zoning ordinance to rezone the property as necessary to conform the ordinance to the Plan as it would be required to by statute if the zoning ordinance were inconsistent. See Comp. Pl. at VIII 30-31 (listing necessary revisions to the zoning ordinance). Accordingly, this Court finds that to rezone the property at issue from conservation land to intense commercial is inconsistent with the proposed future uses stated in the Comprehensive Plan.
 Ordinance 04-O-2 is Inconsistent with the Goalsand Policies of the Comprehensive Plan
With regard to preserving open space, the drafters of the Comprehensive Plan set out clearly stated goals and policies. The Open Space and Recreation Element states:
 "The most salient point that affects the provision of outdoor recreation for Woonsocket is that the City is `land poor'. . . . In terms of land use, the options available to the City are:
 To protect those remaining areas of the City that are undeveloped from unsympathetic development.
 To find pockets of space in the urban matrix that can be devoted to recreational purposes; and
 To make more effective use of the space currently devoted to recreation." Comp. Pl. at VI-3 through 4.
The Land Use Element of the Comprehensive Plan provides:
 "The City's Land Use Plan can be seen as the physical, geographical interpretation of the other subject areas of this plan. Therefore, through the City's powers to regulate land use, the City will strive toward the following goals and policies:
. . .
 5. To protect Woonsocket's few remaining natural areas and preserve and enhance the physical remains and sites associated with its cultural heritage by:
 Incorporating natural and cultural resource protection in its development and redevelopment processes;
. . .
 7. To provide access to open space for all its residents and bring environmental values into the City by:
. . .
 Preserving and protecting significant undeveloped and environmentally sensitive areas through acquisition and regulatory programs." Id. at VIII-25 through 27.
When viewed in light of these stated goals and policies, Ordinance 04-O-2 is quite apparently inconsistent with them.
Notwithstanding that they have waived an evidentiary hearing on this question and rely upon the language of the Ordinance alone, defendants urge that a condition on rezoning the property is that Wal-Mart will renovate the retention pond and make storm water improvements, rendering the remainder more usable to the public by reducing flooding. They contend that this will work to preserve and protect the subject property, and will further the stated goal of diversifying the park system because it will make the subject property more useful for passive recreation purposes that heretofore have been impractical because of the land's state of "disrepair." Even assuming this to be true, the Court notes that renovating the retention pond could be accomplished by means other than rezoning the property.
The Court finds that the rezoning of land set aside for passive recreation to allow for major commercial development is not consistent with the drafters' concern for preserving scarce undeveloped land as stated in the Comprehensive Plan, and is contradictory to the stated policies of protecting and making more effective use of open space. While the Court recognizes there may be value to the City if these proposed improvements are made to the subject property, the fact remains that the rezoning will reduce the size of this parcel of conservation land by one fourth and reduces the total amount of conservation land in Woonsocket. The Court finds this to be contrary to the policies identified in the Comprehensive Plan. Moreover, the Plan recognizes that not all land zoned for Public Recreation is currently used for recreation; the zoning classification "represents the City's determination to protect its scarce resources for future recreational use." Id. at VI-10. Thus the fact that the subject property may not currently be used for recreation is of no import.
The defendants also contend that allowing a large, existing commercial property owner to expand its operation is consistent with the policy, as stated in the Plan, of "allow[ing] for flexible development by increasing options available to property owners." See id. at VIII-25. However, interpreting "flexible development" so as to allow the development of Woonsocket's "few remaining natural areas" would be at odds with the express policy of protecting the natural areas and reading such a meaning into the Comprehensive Plan would render its policies internally inconsistent — in derogation of § 45-22.2-6. The policies and goals of the Comprehensive Plan must be construed such that they can be reconciled with each other. Id.
The defendants argue, too, that Ordinance 04-O-2 is consistent with the Comprehensive Plan because it advances the goals and policies of the Economic Development Element. This element identifies the retention of existing businesses and the attraction of new ones as being of "prime importance" to the City. Comp. Pl. at III-1. However, in terms of land development, the Plan focuses on infilling and redevelopment, including the "renovation and retrofitting of mill buildings for industrial use."Id. at III-22; see also id. at III-25, IV-37. There is simply no suggestion in the Economic Development Element that developing scarce conservation land is a proper method of fulfilling this goal.
Finally, the defendants argue that Ordinance 04-O-2 is consistent with the Plan's stated policy of being committed to providing well-managed recreational facilities through collaboration with private parties and "aggressive pursuit of sufficient funding." Id. at VI-26. Even assuming that Wal-Mart's agreement to improve the remaining land at its own cost could indeed be characterized as a collaboration with a private party to manage a recreational facility, the fact that one aspect of Ordinance 04-O-2 may be consistent with the Comprehensive Plan is not enough where, on the whole, the Ordinance is contrary to both specific provisions and broad goals and policies of the Plan.
 CONCLUSION
After comparing Ordinance 04-O-2 with the City's Comprehensive Plan and specific provisions, goals and policies of that Plan, this Court finds Ordinance 04-O-2 is contrary to both the specific provisions of as well as the overall goals and policies expressed in the City's Comprehensive Plan and that it constitutes spot zoning. As such, the Ordinance is invalid. Plaintiffs' appeal is sustained. The parties shall submit an appropriate order, consistent with this decision.
[1] Per the Zoning Ordinance, the intensity of use, from lowest to highest is as follows: PR-2, PR-1, R-1, R-2, R-3, R-4, MU-I, C-1, C-2, MU-2, I-1, I-2. Only mixed use industrial/commercial, light industrial, and heavy industrial are classified as higher intensity designations than C-2. See Woonsocket, R.I. Rev. Ordinances app. C § 2.1.
[2] Although the version of Ordinance 04-O-2 originally filed with the Court did not reflect these conditions, counsel submitted the final version of the ordinance at the Court's request.
[3] Pursuant to the Zoning Enabling Act of 1991, the Court has jurisdiction to review amendments to local zoning ordinances. Section45-24-71. Proper grounds for appeal are that the "amendment does not conform with the comprehensive plan" or that the amendment constitutes a taking of property without just compensation. Section 45-24-71(b). If the Court finds that a challenged amendment is not in conformance with the comprehensive plan, then the Court must invalidate it or those parts of it that are not in conformance with the comprehensive plan. Section45-24-71(c). If the amendment is found valid, the Court must then determine whether it results in a taking of property from the aggrieved party; if so, the case must be remanded to the legislative body of the municipality. Section 45-24-71(d). Here, unless the issue becomes moot as a result of this decision, the parties have agreed to defer the question of whether or not the amendment has resulted in a taking until after the Court's determination of the initial question, i.e. conformity with the Comprehensive Plan. At that time, the parties expect to request an evidentiary hearing.
[4] As part of their argument, the defendants contend that the standard of review should be as deferential as the standard of review governing decisions of a zoning board of review, a body that reviews development plans, variance requests, and the like. As indicated, they argue that it would result in an absurd interpretation of the Zoning Enabling Act if review of a zoning ordinance amendment was less deferential than review of the grant or denial of a variance. However, this argument is without merit. The deferential standard of review applied to the decision of a zoning board is expressly set out by statute at § 45-24-69(d). By its terms, that section does not apply to the Superior Court's review of zoning ordinance amendments. Had the legislature intended the Court's review to be similarly limited, it could have so provided. Instead, the General Assembly expressly set a separate standard — that zoning ordinances must be consistent with the comprehensive plan — so no absurdity results.
[5] Although listed in the Table of Contents of the Comprehensive Plan, Map VIII.6 is not included in the body of the document. At the Court's request, counsel submitted the map separately.