DECISION
Before this Court is the appeal of Appellant Barbara Luther (the Appellant) from a decision of the Zoning Board of Review of the Town of Bristol (Zoning Board) granting a dimensional variance to Appellees Peter L. Resnick and Kathleen Resnick (collectively, the Applicants). The contested dimensional variance permits the Applicants to move their residence, which is nonconforming by dimension on three sides, to an area where the house will remain nonconforming on two sides. The Appellant contends that the Appellee Zoning Board violated statutory and ordinance provisions, exceeded its authority, and, arbitrarily and capriciously abused its discretion, when it granted the dimensional variance. Jurisdiction is pursuant to G.L. 1956 § 45-246-9.
 I Facts and Travel
The Applicants are owners of two contiguous pieces of property that form a long, narrow strip of land that runs from Hope Street in the Town of Bristol toward the water (the Resnick Property). They are described as lots Nos. 2 and 21 on Tax Assessor's Plat No. 5 and they are located in an area that is zoned as R-10.See Revised Application. According to the Zoning Ordinance, an R-10 zone requires a minimum setback of thirty feet for both the front and back yards and a minimum setback of fifteen feet for each side yard. See Zoning Ordinance at the Dimensional Table.
It is undisputed that the Resnick Property violates the setbacks required for the front yard and both of the side yards. That is because the current front-yard setback is approximately eleven and one-half feet; the southerly side-yard setback is approximately twelve feet; and, the northerly side-yard setback is less than two feet. However, because the property was built before the implementation of the Zoning Ordinance, it is a permitted nonconforming use by dimension. See § 45-24-31(49). As such, any proposed remodeling projects trigger the jurisdiction of the Zoning Board. See § 45-24-39(a).
In October 2003, the Applicants submitted an Application to make "significant" renovations to their residence. See Book 1151 of the Zoning Board of Review at 7. On May 4, 2004, they filed a Revised Application in which they sought dimensional relief so that they could move their residence in a westerly direction, add a two-story addition and deck to the rear of the house, and add a two-story garage to the front of the house. The resulting move would increase the front-yard setback to approximately seventy-six feet, while maintaining the existing nonconforming side-yard setbacks of approximately twelve feet and less than two feet, respectively. The Appellant, who is a neighbor of the Applicants, objected to the Revised Application.
On July 12, 2004, the Zoning Board held an advertised hearing on the Revised Application. At the hearing, counsel for the Applicants stated that the Applicants wanted to move their house in a westerly direction away from the street while retaining the nonconforming side yards to the north and south, as well as the orientation of the building on the lot. See Book 1151 of the Zoning Board of Review at 7. Applicant Peter Resnick testified that the reason he wanted to move the house was to gain relief from street noise. Id. at 10. He further testified that he believed the proposal would preserve the integrity of the neighborhood and would not impinge on his neighbors' waterviews.Id. He submitted various exhibits in support of the Application.
The Appellant and her daughter, Mrs. St. Vincent, both testified that they believed that the proposal would impinge upon their privacy. Id. at 18-19. Mrs. St. Vincent expressed concerns that if granted, the dimensional variance might set unwanted precedent in the neighborhood. Id. at 19. The Appellant testified that she believed that the move would spoil the "park effect" that the neighboring yards provide and she maintained that the Application should be denied because it is a nonconforming structure. Id.
At the conclusion of the hearing, the Zoning Board granted the dimensional variance by a vote of four to one.[1] The Decision was recorded on September 15, 2004, and the Appellant timely appealed the Decision to this Court.
 II Standard of Review
The Superior Court's review of a zoning board decision is governed by § 45-24-69(d). Section § 45-24-69(d) provides:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, the trial justice "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings."DeStefano v. Zoning Board of Review of Warwick, 122 R.I. 241,245, 405 A.2d 1167, 1170 (1979). The term "substantial evidence" has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance."Lischio v. Zoning Bd. of Review of North Kingstown,818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswell v. George ShermanSand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981)). In conducting its review, the trial justice "may `not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact.'" Curran v. ChurchCommunity Housing Corp., 672 A.2d 453, 454 (R.I. 1996) (quoting G.L. 1956 § 45-24-69(d)).
The deference given to a zoning decision is due, in part, to the fact "that a zoning board of review is presumed to have knowledge concerning those matters which are related to an effective administration of the zoning ordinance." Monforte v.Zoning Bd. of Review of East Providence, 93 R.I. 447, 449,176 A.2d 726, 728 (1962). However, the "deference due to an agency's interpretation of its governing statute and regulations is far from blind allegiance" Citizens Savings Bank v. Bell,605 F. Supp 1033, 1042 (D.R.I. 1985). That is because, a zoning board's determinations of law, like those of an administrative agency's, "are not binding on the reviewing court; they `may be reviewed to determine what the law is and its applicability to the facts.'"Gott v. Norberg, 417 A.2d 1352, 1361 (R.I. 1980) (quotingNarragansett Wire Co. v. Norberg, 118 R.I. 596, 376 A.2d 1, 6
(1977)).
 III Analysis
The Appellant contends that the Zoning Board erred in finding that the alleged hardship suffered by the Applicants amounted to more than a mere inconvenience. She also asserts that the dimensional variance violated the Zoning Ordinance. She further maintains that the Zoning Board failed to consider the findings and recommendations, if any, of the Planning Board in making its decision.
In response, the Applicants assert that the Zoning Board properly granted the dimensional variance because it was the least relief necessary and was supported by the substantial evidence. They further contend that Section 1008.2 of the Zoning Ordinance for the Town of Bristol (the Zoning Ordinance) is void because, they allege, it conflicts with the Zoning Enabling Act.[2] This Court concludes that notwithstanding the alleged hardship, the dimensional variance that was granted in this case violated both the law of Rhode Island and the Bristol Zoning Ordinance.
A. Statutory Interpretation
The dispositive issue in the instant matter is this Court's interpretation of the Bristol Zoning Ordinance and, in particular, its interpretation of Section 608.3. This Court reviews issues of statutory interpretation de novo. SeePalazzolo v. State ex rel. Tavares, 746 A.2d 707, 711 (R.I. 2000). It is well settled that "the rules of statutory interpretation apply equally to the construction of an ordinance." Mongony v. Bevilaqua, 432 A.2d 661, 663 (R.I. 1981).
Where the language of a statute or ordinance "is clear on its face, then the plain meaning of the statute must be given effect and this Court should not look elsewhere to discern the legislative intent." Retirement Bd. of Employees' RetirementSystem of State v. DiPrete, 845 A.2d 270, 297 (R.I. 2004) (internal quotations omitted). This means that when "a statutory provision is unambiguous, there is no room for statutory construction and [this Court] must apply the statute as written."Id. With these principles in mind, this Court will now address the dimensional variance at issue.
B. The Dimensional Variance
This case involves a property that is legally nonconforming by dimension. The Applicants sought a dimensional variance so that they could move their house while retaining the current nonconforming setbacks on two sides of the building. In granting the dimensional variance, the Zoning Board found that the Applicants were suffering from a hardship because "the lot is very narrow, which precludes other solutions for locating the house." It further found that relief granted is the least relief necessary "because the left and right side yards will be the same as exist now with the existing house." It then found that this relief is not contrary to the public interest because "it would be impossible to make any structure on this very narrow lot conform to the side setbacks. However, by moving it, it will conform to one set back, the front set back that is non-conforming now."
Before granting a variance, a zoning board is required to consider and enter into the record satisfactory evidence of the following standards:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting those physical disabilities addressed in § 45-24-30(16);
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief to be granted is the least relief necessary.
 (d) The zoning board of review shall, in addition to the above standards, require that evidence is entered into the record of the proceedings showing that: . . . in granting a dimensional variance, that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted is not grounds for relief." Section 452-4-41(c) and (d).[3]
In 1991, the General Assembly enacted the Rhode Island Zoning Enabling Act. See G.L. 1956 chapter 24 of title 45, as enacted by P.L. 1991, ch. 307, § 1. Its purpose is to require "that zoning ordinances be developed and maintained in accordance with a comprehensive plan prepared pursuant to the Rhode Island Comprehensive Planning and Land Use Regulation Act (CPLURA)."P.J.C. Realty, Inc. v. Barry, 811 A.2d 1202, 1204 (R.I. 2002).[4] According to § 45-22.2-2 of the CPLURA, all towns and cities are required to "adopt, update, and amend a comprehensive plan, including implementation programs, in conformity with the provisions set forth in the act." P.J.C.Realty, Inc., 811 A.2d at 1204. (quoting Town of East Greenwichv. Narragansett Electric Co., 651 A.2d 725, 727 (R.I. 1994)).
The Zoning Enabling Act defines nonconformance as "[a] building, structure, or parcel of land, or use thereof, lawfully existing at the time of the adoption or amendment of a zoning ordinance and not in conformity with the provisions of that ordinance or amendment." Section 45-24-31(49). A building that is nonconforming by dimension is defined as one that is
 "not in compliance with the dimensional regulations of the zoning ordinance. Dimensional regulations include all regulations of the zoning ordinance, other than those pertaining to the permitted uses. . . . [A] building . . . containing a permitted number of dwelling units by the use regulations of the zoning ordinance, but not meeting the lot area per dwelling unit regulations, is nonconforming by dimension." Section 45-24-31(49)(ii).
The scope of nonconforming uses should be strictly construed because they are viewed "as detrimental to a zoning scheme, and the overriding public policy of zoning . . . is aimed at their reasonable restriction and eventual elimination." Town ofRichmond v. Wawaloam Reservation, Inc., 850 A.2d 924, 934-5
(R.I. 2004).
Section 23-27.3-116.4 of the State Building Code, entitled Agreement Condition to Moving, provides: "No building shall be moved from one location to another and no permits shall be issued for its removal until the owner or owners of the buildings shall sign an agreement to make the building conform to the requirements of this code for new buildings in its new location." G.L. 1956 § 23-27.3-116.4. However, "[i]n respect to location, use and type, permissible area, and height, the local zoningordinance shall control." Section 23-27.3-101.3 (emphasis added).
It should be noted that while the Enabling Act does permit a zoning ordinance to provide for the alteration of a nonconforming development, the Bristol Zoning Board did not so provide in its Ordinance. See Section 45-24-40(a)(2) ("The ordinance may allow the addition and enlargement, expansion, intensification, or change in use, of nonconforming development either by permit or by right and may distinguish between the foregoing actions by zoning districts."). Instead, section 608 of the Bristol Zoning Ordinance, which regulates buildings and structures that are nonconforming by dimension, provides:
 "Buildings or structures that are nonconforming by dimension are likely to cause overcrowding and congestion in the neighborhoods, contribute to unhealthy conditions and are contrary to the purposes of this Ordinance. Buildings or structures that are nonconforming by dimension cause disruption of the overall land use pattern of the Town, inhibit present and future development of nearby properties, and confer upon their owners a position of unfair advantage. It is intended that existing buildings or structures that are nonconforming by dimension shall not justify further departures from this Ordinance for themselves or for any other property in the neighborhood." Section 608 of the Zoning Ordinance for the Town of Bristol.
In Bristol, "[a] building . . . which is nonconforming by dimension shall not be moved in whole or in part to any other location on the lot on which it is located unless every portionof such building . . . is made to conform to all of thedimensional requirements of the Zone in which it is located." Section 608.3 of the Zoning Ordinance for the Town of Bristol (emphasis added). This language is clear and unambiguous on its face. The plain and ordinary meaning of Section 608.3 is that the Zoning Ordinance prohibits the relocation of a building that is nonconforming by dimension unless all of the proposed setbacks are in conformance with the Zoning Ordinance.
In the present case, while it may have been true that "other solutions for locating the house" were precluded, and that "by moving it, it will conform to . . . the front set back that is non-conforming now[,]" the Zoning Board did not have the authority under its Zoning Ordinance to grant a dimensional variance to relocate the house to an area where it would retain its nonconforming side setbacks. Section 608.3 could not be clearer: a building that is nonconforming by dimension may not be moved unless it is brought into conformance with the Zoning Ordinance.
In Bristol, the side setback requirement for properties located in R-10 zones is fifteen feet. It is undisputed that the Resnick property, as it exists now, is nonconforming by dimension on both of its side setbacks. It is also undisputed that the very same setbacks will exist after the house is moved; namely, less than two feet on one side and approximately twelve feet on the other side. Such a result is in direct contravention of the plain and ordinary meaning of the 608.3 of the Zoning Ordinance for the Town of Bristol, as well in violation of §§ 23-27.3-101.3 and23-27.3-116.4 of the Building Code. Furthermore, considering that the scope of nonconforming uses should be strictly construed due to the fact that public policy disfavors them and seeks their eventual elimination, the actions of the Zoning Board in this case failed to comport with the aims of the Zoning Enabling Act. Consequently, the Zoning Board's decision must be reversed. SeeTown of Richmond, 850 A.2d at 934-5.
 IV Conclusion
After a review of the entire record, this Court finds that the Zoning Board's granting of the dimensional variance was in violation of statutory and ordinance provisions, was in excess of the authority granted to the zoning board, and was arbitrary and capricious. The Zoning Board's decision also was affected by error of law and was characterized by an abuse of discretion. Substantial rights of the Appellant have been prejudiced. Accordingly, this Court reverses the Zoning Board's decision.
Counsel shall submit an appropriate order consistent with this opinion.
[1] The Chairman of the Zoning Board voted against the Motion to Approve the Application. He stated: "The only reason I am [voting against the Motion] is that when you're doing something like this, make a move like this, they should bring the house into conformance with the zoning requirements as specified in our Ordinance." Book 1151 of the Zoning Board of Review at 27.
[2] Specifically, the Applicants assert that the Zoning Board acted ultra vires when it mandated requests to the Planning Board for findings and recommendations because the Zoning Enabling Act only makes such requests permissive. Compare
Section 1008.2 of the Zoning Ordinance for the Town of Bristolwith G.L. 1956 § 45-24-29(5). Should this Court disagree with the Applicants' contention on this issue, they seek, in the alternative, that this Court remands the case to the Zoning Board and order it to "request an advisory opinion/recommendation from the Planning Board, which shall report its findings and recommendations respecting the application. . . ." The Appellant objects to the latter request; however, if granted, she seeks this Court to then reopen the proceedings "to allow public comment and additional evidence on the findings and recommendations of the Planning Board. . . ." In light of this Court's decision to reverse the Zoning Board's decision, these issues need not be addressed.
[3] Arguably, the Zoning Board did not follow these standards in making its findings; however, that issue is not before this Court.
[4] The Rhode Island Comprehensive Planning and Land Use Regulation Act is contained in G.L. 1956 chapter 22.2 of title 45.